State vs. Brown et al.

## No. 235.

### THE STATE OF LOUISIANA VS. HENRY BROWN ET AL.

The refusal of the judge in a trial for murder to charge the jury that under the laws of Lou isiana, "in all trials for murder the jury may find a verdict of manslaughter," in accordance with section 785 Revised Statutes of 1870, is a fatal error, which will vitiate the verdict found against the accused, and entitle him to a new trial.

APPEAL from the First District Court, Parish of Caddo. *Hicks*, J.

*J. Henry Shepherd*, District Attorney, for the State, Appellee:

1. The action of the court below in denying a motion for a continuance, will not be reversed in the absence of a showing that the court has abused its discretion. The matter of con - tinuance is within the sound discretion of the district court, and the Supreme Court will not interfere in such matter unless the action of the lower court involves palpable injustice. 31 Ann. 179; 32 Ann. 1003 in particular. 33 Ann. 262, 681; 36 Ann. 153, 852.

2. It must be an arbitrary and oppressive exercise of power on the part of the court in re fusing a continuance to justify the interference of the Appellate Court, and the remanding of the case. C. J. Bermudez in State vs. Chevalier, 36 Ann. 86, 852, 877.
The onus rests upon the accused to show the same affirmatively. 37 Ann. 128.

3. Due diligence must be shown to have been used. Diligence is a matter of fact upon which the judge's opinion is, if not conclusive, surely presumptively correct. The Appellate Court will not go to counter it, unless the record shows that the judge was wrong. The mere declaration in the affidavit that the diligence was used, does not conclude the judge. It may so happen * * * that the judge had before him the proof that due diligence was not used as alleged. 37 Ann. 129.
"Is it credible that a prisoner about to be tried for his life would not compel an important witness to give recognizance to attend the trial, and thus secure his testimony, if the witness was truly material? All that enters into the question of the diligence." State vs. Clark, 37 Ann, 130; 39 Ann. 420.

4. When the life and liberty of a prisoner are at stake and the prisoner confined in a dungeon, it is the duty of the sheriff in charge of subpenas for his witnesses, to go to his dungeon and obtain from him any information which may enable him to execute the process of the court; nor is this all, their return must show what inquiries they have made, from whom, and where those inquiries were made, to find the prisoner's witnesses. * * * They must state every fact which in their opinion justifies their belief. State vs.

| | |
|---|---|
| 40 | 725 |
| 45 | 43 |
| 40 | 725 |
| 46 | 705 |
| 46 | 1398 |
| 40 | 725 |
| 50 | 154 |
| 40 | 725 |
| 104 | 45 |
| 40 | 725 |
| 113 | 781 |
| 40 | 725 |
| 115 | 767 |
| 40 | 725 |
| 117 | 116 |

State vs. Brown et al.

Boitreaux, 31 Ann. 189.  It is want of diligence on the part of the accused in not seasonably giving the sheriff, when he calls on him to do so, the locality at which the witness could have been found or served.  34 Ann. 73; 39 Ann. 674.

Facts and circumstances occur under the eye of the court which govern its discretion.  37 Ann. 128.  It is the duty of the sheriff to show truly every effort he has made to secure a witness and to whom he has applied, if to defendant, that person's answers would materially aid the court in passing on defendant's diligence.

5.  The fact that a witness was an accomplice may affect his credibility, but not his competency.  23 Ann. 78; 25 Ann. 522.  As juries are the exclusive judges of the evidence in this State, it is plainly good law to charge them only as to the competency of the evidence, and not by a charge as to credibility trench on their functions.

6.  There is no rule of law requiring the judge to charge the jury that the testimony of an accomplice needs confirmation; it is a rule of practice (25 Ann. 522) reaffirmed.  State vs. Russell, 33 Ann. 138; State vs. Mason, 38 Ann. 476; State vs. Crowley, 32 Ann. 782.

7.  Under the common law practice, the testimony of an accomplice is alone an unconfirmed, legally adequate, to sustain a verdict of guilty, should the jury believing him see fit to render it thereon.  Bishop, 1 vol., C. P., section 1169.  No statute of Louisiana abrogates this common law practice, hence it is the law of this State.

8.  Where an accused on an appeal complains of a refusal of the trial judge to charge the jury that they ought not to convict on the uncorroborated testimony of an accomplice, the burden is on him to show, by the record, that there was no corroborating evidence of the testimony of an accomplice.  The failure to show such a state of facts is fatal to his demand for reversal, as the court will presume that the jury convicted on sufficient competent evidence.

In short, he must show the applicability of the rule to his case, and failure to do so is presumptive that the court charged all the law applicable to the case.  38 Ann. 478.

9.  The evidence of a conspirator of facts, which occurred while the conspiracy was on foot, is admissible.  35 Ann. 89; 37 Ann. 360; Bishop C. P. 228, 230.  Again, the testimony of particular facts after the consummation made by one of the co-conspirators, as detailed by another in his presence, is admissible.  Bishop C. P., vol. 2, section 228; Bishop, 1 C. P. 1248, 1249.  There is a wide difference between the confession of a co-conspirator after the consummation of the crime and his evidence as to declarations of other conspirators of acts and declarations while the conspiracy is on foot before the end of the act.

10.  A separation will not vitiate a verdict unless it be of such a character that prejudice to the party complaining may be expected to have resulted therefrom.  The rule does not reach such temporary separations as may be reasonably anticipated, or must necessarily occur in the course of a protracted trial.

The fact that while the jury engaged in the trial of a capital case were deliberating upon their verdict two of the jurors retire from the room to obey a call of nature, is not such separation as would vitiate the verdict, when it appears that during such separation they were under the direct supervision of a deputy sheriff, and that they were not communicated with.  State vs. Turner, 25 Ann. 573; 28 Ann. 657; State vs. Johnson, 30 Ann. 921.

*John W. Jones* and *Wise & Herndon,* for Defendants and Appellants.

The opinion of the Court was delivered by

Poché, J.  Henry Brown, the appellant, and several others were jointly indicted for conspiracy and murder.  Before his trial, the case was continued as to one of the defendants, and a *nolle prosequi* en-

tered as to the others, confining the trial to Henry Brown alone, who was convicted of murder, and sentenced to death.

On appeal, his counsel complain of numerous errors to his prejudice, but the conclusion which we have reached as to one of those complaints obviates a discussion of all others.

In his general charge to the jury the trial judge instructed them as to the different verdicts which they could find, in the following language :

"In cases of this character there are three verdicts the law has provided may be found by the jury according to the law and the evidence of cases :

1. "Guilty. Death is the penalty to be pronounced upon such verdict.

2. " Guilty, without capital punishment.

" The penalty for such verdict is confinement at hard labor for life.

3. "Not guilty. Upon such verdict the defendant will be discharged without any punishment."

As the judge had been entirely silent throughout his whole charge on the subject of manslaughter, counsel for the defense requested him to give the following instructions to the jury : " There shall be no crime known under the name of murder in the second degree, but on trials for murder the jury may find the prisoner guilty of manslaughter," which is a literal copy of section 785 of the Revised Statutes of 1870, and of a section of act 130 of 1855.

The charge was refused by the judge on the ground, substantially, that the ruling invoked by the defense was inapplicable to the state of facts developed during the trial, which admitted of no mitigated verdict, but called absolutely for a verdict of "guilty," or "not guilty," and that to have given the charge requested would have been simply the enunciation of an abstract legal proposition which had no bearing upon the case on trial. And in an able and learned opinion he quotes in support of his conclusion a multitude of authorities, both from this and other courts of the country, from whose uniform rulings the principle has been formulated as follows :

" A judge not only may, but should, refuse to charge an abstract legal proposition, which has no bearing upon the case on trial, whether the proposition be correct or incorrect, or whether it be correct in part and incorrect in part." State vs. Daly, 37 Ann. 576.

But in his ruling, the judge confounded the rule of jurisprudence as established by the line of authorities which he invokes, with a rule o law emanating directly from the law-making power, made imperative

in terms and in spirit on the courts of the State, applying directly to the case on trial, and unaffected by the state of facts as disclosed by the evidence, in the opinion of the trial judge. The laws' command is that the jury must be informed by the court that on trial for murder the jury may find the prisoner guilty of manslaughter, and the omission or the refusal to so inform them is a flagrant disobedience of the law, and is a fatal error.

In such cases the jury are the sole judges of the state of facts disclosed on the trial which may justify them to return a verdict of manslaughter, and the court is powerless to avoid their verdict, because in its opinion the evidence called for the finding of the higher offense. The verdict under the law would be responsive to the indictment, and it should stand, although it might be illogical, unjust or unjustifiable under the evidence.

Examples are not wanting of cases in which the jury have condemned some of the conspirators in a murder case for the highest offense charged, and the other conspirators for manslaughter only. Ford's case, 37 Ann. 443.

The question is not one of a proper charge under the test of the evidence on the trial, but one of compliance with an absolute mandate of the law.

Under the present state of our legislation, the jury have the option to find one of four verdicts, namely: *"Guilty,"* "Guilty, without capital punishment," "Guilty of manslaughter," and "Not guilty." But under the effect of the charge as given to them in this case, they were restricted to only three; that of guilty of manslaughter having been completely eliminated from their consideration by the refusal of the judge to give them the instruction requested by counsel, and required by law.

The practical effect of his charge to the jury was to require them, in case they found Henry Brown guilty at all of the charge for which he was on trial, it was murder, and nothing else, a positive mandate of the law to the contrary notwithstanding.

A charge of similar import came under the consideration of this court in the case of State vs. Obregon, 10 Ann. 799, under an indictment of arson.

In that case the judge omitted to charge the jury that, "in all cases where the punishment demanded by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto 'without capital punishment,' as required by the Statute of May, 1846, now embodied

as section 1000 in the Revised Statutes. Among other things, the court said :

" The upshot of the charge was, to impress the jury with the idea that if they found the prisoner guilty of arson at all, it was their duty not to qualify their verdict by adding the words without capital punishment. * * *

"Aside from the general tenor of the judge's charge in this instance, there was error in instructing that it was their duty to find an unqualified verdict, if the case was clear ; * * and the charge amounted to an instruction that, if a person was found guilty of arson he should always be punishable with death, overlooking the act of May 29, 1846, hereinabove quoted."

It must be noted that the case originated before the enactment of the statute of 1855, section 785 of the Revised Statutes, which we are now considering. In that case the judge merely omitted to charge the jury : while in the instant case he not only omitted but positively refused the charge, notwithstanding counsel's urgent request.

We have been at great pains to scrutinize our jurisprudence on this point, and to closely examine the large array of authorities relied on by the district judge in support of his conclusions herein, but we have been unable to find, and we apprehend that it is impossible for any one to produce a single judgment of any American court of last resort, which upholds that the trial judge of a criminal court in refusing to charge to the jury a statute of the State, defining the duties and powers of the jury in reference to the verdict which they may render in the particular case on trial.

But, on the other hand, we find among the decisions quoted by our learned brother of the district court, a general current of thought decidedly to the reverse. Thus, in Patton's case, 12 Ann. 288, (quoted by him), we find the following :

" The prisoner pleaded not guilty to an indictment for murder. Upon the issue thus joined, the jury had power to find the prisoner guilty of manslaughter. (Rev. Stat. 136, sec. 2). It was, therefore, pertinent and right for the judge to instruct the jury on the law both of murder and manslaughter, although his counsel chose to assert that the only issue for the jury to try was the insanity of the accused." See also Stouderman's case, 6 Ann. 236; State vs. Ford, 30 Ann. 311.

We are thus forced to the conclusion that, under the rulings of the district court, the accused in this case has been denied one of the shields

of protection which the law extends to him, and that he is entitled to relief at our hands.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury in this case be set aside and avoided, that the judgment rendered thereon be annulled and reversed, and that the cause be remanded t⁰ the district court for further proceedings according to law and to the views herein expressed.