(96 South. 796)

No. 25809.

## STATE v. VIAL.

(April 2, 1923. Rehearing Denied April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Grand jury** &#9756;15—Juror not disqualified because he has made affidavit against defendant.

That member of grand jury has made affidavit against one, for violation of a criminal statute, does not disqualify him to deliberate upon the case and vote for return of indictment against such offender, especially in view of the juror's duty under Rev. St. 1870, § 2140, to disclose personal knowledge or information as to offenses.

2. **Indictment and information** &#9756;10—Nature or quantum of evidence not fixed.

A finding of the grand jury is not a verdict or judgment, but amounts at most to an accusation, and there is no law which fixes the nature or quantum of evidence on which grand jury must rest their conclusions.

3. **Indictment and information** &#9756;10—May act on knowledge of its members without summoning witnesses.

Grand jury may return valid indictment based on knowledge of the facts by its members, and without having witnesses summoned before it.

4. **Criminal law** &#9756;304(14) — Judicial notice that district composed of more than one parish.

The court takes judicial cognizance of the fact that the Twenty-Sixth judicial district is composed of more than one parish.

5. **Indictment and information** &#9756;11(1)—Delivery to clerk in sealed envelope without subsequent presentation in open court held sufficient.

Under Act No. 135 of 1898, § 9, permitting judge in district composed of more than one parish to impanel grand jury in advance of time fixed for court's session, and providing for manner of returning report or finding, delivery of indictment to clerk inclosed in sealed envelope *held* sufficient without subsequent presentation in open court.

6. **Criminal law** &#9756;600(1)—State entitled to immediate trial upon admitting that absent witness would swear as claimed.

Under Act No. 84 of 1894, where district attorney admitted that if absent witness were present he would testify as stated in sworn motion for continuance, the state was entitled to immediate trial.

7. **Criminal law** &#9756;598(7)—Continuance properly denied when defendant had not complied with statutory requirements for obtaining witness from another parish.

A motion for continuance for absence of witness was properly overruled when showing on its face that defendant knew witness resided in another parish and had not made the affidavit and obtained the order required, under Rev. St. 1870, § 1036, to have witness summoned from another parish.

8. Indictment and information ⬤⟹189(8)—Proper to permit state's attorney to abandon charge of murder and try defendant for manslaughter.

Where jury had disagreed on former trial for murder, it was not error to permit the state's attorney to abandon the charge of murder and try defendant for manslaughter only.

9. Homicide ⬤⟹11, 35—"Murder" and "manslaughter" defined.

"Murder" is a felonious homicide committed with malice aforethought, and "manslaughter" a felonious homicide committed without malice aforethought, such malice being the aggravating element raising the homicide to the higher grade of murder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter; Murder.]

10. Indictment and information ⬤⟹189(8)—One charged with murder may be found guilty of manslaughter.

Manslaughter is included in the charge of murder, and under the express provisions of Rev. St. 1870, § 785, one on trial for murder may be found guilty of manslaughter.

11. Homicide ⬤⟹315—Verdict for manslaughter is acquittal on charge of murder.

Though evidence shows defendant guilty of murder, a verdict for manslaughter operates as an acquittal of the charge of murder.

12. Homicide ⬤⟹309(3) — Court bound to charge that jury may find defendant guilty of manslaughter though murder proved.

It is the trial judge's mandatory duty, whether so requested or not, to charge that jury may return verdict for manslaughter, regardless of fact that evidence may prove the graver offense of murder to have been committed.

13. Criminal law ⬤⟹872½—Nine jurors may find defendant guilty of manslaughter when charge of murder abandoned.

Under indictment for murder when charge of murder is abandoned, nine jurors concurring can legally return a verdict for manslaughter.

14. Homicide ⬤⟹334—Not prejudicial to permit reading of indictment though charge of murder abandoned.

Where charge of murder was abandoned, and conviction for manslaughter only sought, and district attorney told the jury, and the court charged, that defendant was being tried only for manslaughter, accused was not prejudiced or injured by the reading of the indictment charging murder.

15. Homicide ⬤⟹336—Reading of statute not prejudicial though charge of murder abandoned.

Where the charge of murder was abandoned, and trial judge and district attorney both explained to the jury that defendant was on trial for manslaughter only, defendant was not prejudiced because district attorney read to the jury Rev. St. § 785, permitting verdict for manslaughter on trial for murder.

16. Homicide ⬤⟹158(1)—Testimony that witness left scene because of defendant's threats admissible to rebut claim of self-defense.

Testimony of witness that his reason for leaving the scene of the homicide was that defendant was making threats to kill, and that he knew what was going to take place, was admissible to rebut plea of self-defense over objection that it was only his opinion and irrelevant.

17. Homicide ⬤⟹151(3)—Burden on state to disprove killing in self-defense.

Burden is on the state to prove beyond reasonable doubt that killing was not done in self-defense, but was willful and felonious.

18. Homicide ⬤⟹338(1)—Testimony that coroner's jury brought in verdict not prejudicial when nature not disclosed.

On trial for manslaughter, defendant was not prejudiced by admission of testimony that coroner's jury brought in verdict where its nature was not shown.

19. Criminal law ⬤⟹667(1)—Court not required to have testimony taken out of jury's presence.

A district judge is not required to have testimony of witness as to any particular point taken out of jury's presence, this matter being left to his discretion.

20. Homicide ⬤⟹338(2)—Incidental testimony that deceased and his companions were given wine in defendant's soft drink place held not prejudicial.

Under evidence as to circumstances surrounding killing of one who, after leaving defendant's soft drink place with his companions, returned and was killed, incidental mention of fact that he and his companions were given wine in such place *held* not prejudicial.

**21. Criminal law ☞419, 420(6) — Homicide ☞196—Testimony as to deceased's declaration showing reason for going into defendant's place of business held not hearsay.**

Where defendant's wife testified that deceased attacked her upon entering defendant's place of business, and defendant claimed the killing was in defense of his wife, testimony that deceased said he was going there to collect some money, was not objectionable as hearsay, though made out of defendant's presence, but admissible as tending to rebut the claim of self-defense.

**22. Homicide ☞196 — Evidence tending to show indebtedness held admissible to sustain state's theory of cause of difficulty and show plea of self-defense a fabrication.**

Where it was state's theory that difficulty between defendant and deceased arose over collection of debt, but defendant's wife testified that deceased attacked her, and that her husband did not owe deceased anything, and did not have any boats belonging to deceased, testimony that deceased had left boats with defendant, and that witness had heard conversation between deceased and defendant about their rental, was relevant and material to rebut the wife's testimony and sustain the state's theory and show that plea of self-defense was a fabrication.

**23. Criminal law ☞1120(4)—Bill of exceptions not showing answer to question does not disclose prejudice.**

Where bill of exceptions fails to show what witness answered to question objected to, it does not disclose prejudice.

**24. Witnesses ☞330(1) — Cross-examination concerning matter not inquired about in chief held competent to test credibility.**

Where defendant's wife testified that deceased attacked her, cross-examination as to why her sons did not bring help *held* admissible to test her credibility, though relating to matter not inquired about in chief.

**25. Criminal law ☞1166½(1) — Proceeding with trial with sick juror held not reversible error.**

It was not error to proceed with trial on statement of sick juror that he felt he could go ahead unless he got worse, where he did not afterwards make any complaint, or ask for an adjournment, especially where he voted for acquittal.

**26. Criminal law ☞718 — Bill of exceptions held not to show ground for reversal in overruling objection to counsel's remark.**

Bill of exceptions, complaining of overruling of objection to counsel's remark in argument that he was employed by citizens, is without merit when not showing the grounds of objection, and not showing any prejudice, and when no action was requested or taken by the judge.

**27. Homicide ☞300(5)—Instruction as to effect of retreating on right of self-defense properly refused as misleading.**

Instruction that if defendant brought on difficulty and was the aggressor, but retreated, his right of self-defense revived, was properly refused as misleading, in that under it retreat revived such right, though in bad faith and for purpose of taking advantage of deceased.

**28. Criminal law ☞913(1)—Remedy for prejudice is by motion for change of venue, and not by motion for new trial.**

If defendant could not obtain an impartial trial in parish where indictment was pending, by reason of prejudice caused by newspaper articles, his remedy was to apply for change of venue, under Rev. St. 1870, § 1022, and not wait until after verdict and sentence before complaining of the prejudice, in motion for new trial.

**29. Criminal law ☞1141(1)—Presumed that defendant would not have risked trial if there had been any general prejudice against him.**

It is to be presumed that defendant would not have risked a trial at all without applying for change of venue if there had existed in fact any general prejudice against him in the parish.

**30. Criminal law ☞956(8)—Facts to be shown to obtain new trial for juror's incompetency stated.**

To obtain new trial for incompetency of juror, defendant should prove that he was incompetent, that the fact was unknown to defendant and his counsel until after verdict, and that the juror was questioned as to his competency and answered that he was competent.

**31. Criminal law ☞1090(14)—When bill of exceptions not taken to refusal of charges, including them in motion for new trial does not authorize review.**

Where no bill of exceptions was reserved to the court's refusal of special charges when presented, the fact that they have been attached to, and made a part of, the motion for new trial

does not authorize the Supreme Court to pass upon them.

O'Niell, O. J., dissenting in part.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Emile Vial was convicted of manslaughter, and he appeals. Affirmed.

C. Sidney Fredericks, of Covington, and Ponder & Ponder, of Franklinton, for appellant.

A. V. Coco, Atty. Gen., J. Vol Brock, Dist. Atty., of Franklinton, T. S. Walmsley, of New Orleans, and Miller & Miller, of Covington, for the State.

LAND, J. Under an indictment charging defendant with murder, he was convicted of manslaughter, and sentenced to be imprisoned in the penitentiary at hard labor for not less than 15, nor more than 20, years. Defendant has appealed, relying upon numerous bills of exceptions for the reversal of the conviction and sentence against him.

### Bill of Exceptions No. 1.

Defendant filed a motion to quash the indictment upon the following grounds, alleging:

(1) That two members of the grand jury had joined 24 other citizens in making affidavit against him, charging him with murder, and that said grand jurors, notwithstanding their interest and activities in the matter, participated in the proceedings of the grand jury that found the true bill in this case.

(2) That the district court was in vacation at the time said indictment was found and returned, and that said grand jury was without right, power, or authority to assemble and report true bills.

(3) That the district court was in vacation, and no judge present to receive bills of indictment at the time the indictment was reported herein, and that no provision of law authorizes sealed bills.

[1, 2] The motion was properly overruled. The mere fact that a member of a grand jury has made an affidavit against a citizen for the violation of a criminal statute does not disqualify such member and render him incompetent to deliberate upon the case and to vote for the return of a true bill against such offender. The finding of a grand jury is not a verdict or judgment; it amounts, at most, to an accusation, and there is no law which fixes the nature or the quantum of evidence on which the grand jury must rest their conclusions. State v. Lewis, 38 La. Ann. 680.

It is the legal duty of every member of a grand jury to inform his fellows of any crime or misdemeanor committed within the parish since the sitting of the last grand jury, which may have come to his personal knowledge, or of which he may have been informed, and a violation of this duty is made a criminal offense by section 2140 of the Revised Statutes of 1870, punishable by severe penalties. This section of the Revised Statutes makes it plain that even personal knowledge of the commission of a crime does not disqualify a grand juror. He may therefore be a witness in the case, and still be competent to serve as a member of the inquisitorial body. Hence, the making of an affidavit in a criminal case is not a legal cause for the disqualification of a grand juror.

[3] A grand jury may return a valid indictment into court based on knowledge of the facts by its members, and without having witnesses summoned before that body. State v. Richard, 50 La. Ann. 210, 23 South. 331; State v. Britton et al., 131 La. 878, 60 South. 379. This disposes of the first ground of the motion to quash.

[4, 5] The second ground of this motion is predicated upon the proposition that the grand jury is without legal authority to con-

vene, investigate criminal cases, and report true bills while the court is in vacation. We take judicial cognizance of the fact that the Twenty-Sixth judicial district is composed of more than one parish, and in such cases section 9 of Act 135 of 1898 provides that the judge may inpanel the grand jury in advance of the time fixed for the next session of the court. Said section also provides that:

"Any report or finding by the grand jury by indictment or otherwise, if the court be not in session, shall be delivered by the foreman to the clerk of the court who shall file the same, provided, the judge may instruct the grand jury in any case, in returning an indictment, to deliver the same to the clerk of the court * * * in a sealed envelope, or to make their presentment in open court without mentioning orally the name of the person accused."

As to the third ground of the motion that no judge was present to receive bills of indictment at the time the bill was reported in this case, because the court was in vacation, it is admitted that:

"The judge was not present in Covington at that time, but he was at his domicile in Washington parish. That the indictment was sealed and delivered to the court in open court and opened on the 5th day of October, as marked on the envelope and as being filed in open court at that time."

The delivery by the foreman of the indictment to the clerk, inclosed in a sealed envelope, was a sufficient compliance with the statute. Its subsequent presentation in open court by the grand jury was unnecessary.

### Bill of Exceptions No. 2.

This bill was reserved to the overruling of a motion for continuance based on the absence at the trial of R. A. Snow, a resident of the city of New Orleans, and alleged to be an important and material witness on behalf of defendant. The district attorney admitted that the absent witness, if present, would swear to the facts as alleged in the motion for a continuance. The trial judge states also that when the name of the witness was called, announcement was made in open court by a by-stander by the name of Snow, presumably a relative of the witness, that R. A. Snow was then in Cuba, and that no information was given as to the date of his probable return, or that he would ever return.

[6, 7] Under Act 84 of 1894, the district attorney having admitted that if the absent witness were present he would testify as stated in the motion made under oath for a continuance, the state was entitled to an immediate trial. State v. O'Neal, 136 La. 558, 67 South. 365. Aside from the lack of probability of securing the attendance of this witness at the next term of court, the continuance was properly overruled, as defendant's motion for continuance shows upon its face that he knew that the witness resided in another parish; and the record fails to disclose that defendant made the affidavit and obtained the order required by section 1036 of the Revised Statutes of 1870. State v. Lee, 130 La. 477, 58 South. 155; State v. Romero, 117 La. 1003, 42 South. 482; State v. Nix, 111 La. 812, 35 South. 917.

### Bill of Exceptions No. 3.

Before the jury was called, the district attorney abandoned the charge of murder, and announced his intention to prosecute defendant under the indictment for manslaughter. An objection was made to this procedure by counsel for defendant on the following grounds:

(1) That this action on the part of the state's attorney was in effect a nolle prosequi and the filing of a bill of information, and that the change in the indictment was material.

(2) That the only proper course for the district attorney to pursue was to formally enter a nolle prosequi as to the indictment returned by the grand jury, and file a bill of information.

(3) That to so suddenly change the form of the charge, after the ruling by the court

on the question of motion for continuance had been made, was detrimental to defendant.

(4) That if this change was permitted by the court after the first juror had been called to the box, it would show on its face an effort on the part of the state to try to convict defendant on the concurrence of nine jurors.

[8] The judge a quo overruled these objections, declined to permit the prosecuting officer to strike from the indictment the words "of malice aforethought did kill and murder" and substitute the word "slay," but permitted the state's attorney to abandon the charge of murder against the accused. The trial judge stated as the reasons for his ruling that on the first trial for murder the jury disagreed, standing 9 to 3, and were discharged, and that he would explain to the jury, when he charged them on the law, that the accused was then on trial for manslaughter, and that nine jurors could acquit or convict on this charge. The ruling of the judge a quo is correct.

[9, 10] Murder is a felonious homicide committed with malice aforethought. Manslaughter is a felonious homicide committed, without malice aforethought, in the heat of passion and upon adequate provocation. Manslaughter is included in the charge of murder, and, by express statute on the subject, it is provided that on all trials for murder the jury may find the prisoner guilty of manslaughter. R. S. 1870, § 785; McClain, Cr. Law, vol. 1, § 338.

Malice aforethought is an essential element of the crime of murder. It is the aggravating element which raises a felonious homicide to the higher grade of murder. When this element is wanting, the homicide, if unlawful, is still felonious, but is reduced to the lower grade of manslaughter. In the case of State v. Fontenot, 131 La. 60, 58 South. 1033, we said:

"The state had the right to abandon the charge of murder and try the accused for manslaughter. Why should the accused complain of being relieved of all chance of conviction of the greater offense?"

In State v. Vaughn, 145 La. 31, 81 South. 745, the district attorney abandoned the charge of murder, after the jury had been impaneled, and proceeded with a prosecution for manslaughter under the indictment. This court held:

"It is well settled that the state may, at any time during a prosecution for a crime in the nature of which are included all the elements of a less serious offense, abandon the prosecution for the graver crime and proceed with the prosecution for the less serious one."

In the Fontenot Case we cite State v. Evans, 40 La. Ann. 216, 3 South. 838, in which we held that, under an indictment for the major, the prisoner could be convicted of the lesser, crime, proof of the first necessarily involving proof of the last. We stated in the Evans Case that the authorities fully sustain the right of the state to abandon or enter a nolle prosequi as to the aggravated circumstance enlarging the crime and to proceed under the indictment for the lesser offense alone, and that this does not alter or amend the indictment, or convert it into an indictment not found by the grand jury; the minor offense being charged in the bill, as found, equally with the greater.

[11, 12] Under our peculiar jurisprudence, arising from the fact that on trials for murder the jury may find the prisoner guilty of manslaughter, although the evidence may show him to be guilty of murder, it is necessarily true that a verdict for manslaughter operates as an acquittal of the charge of murder, especially as it is the mandatory duty of the trial judge, whether so requested or not, to charge the jury that they may return a verdict for the lesser crime, regardless of the fact that the evidence may prove the graver offense to have been committed. State v.

Cook, 117 La. 114, 41 South. 434; State v. O'Conner, 119 La. 464, 44 South. 265; State v. Ford, 37 La. Ann. 443; State v. Brown, 40 La. Ann. 727, 4 South. 897; State v. Brown, 41 La. Ann. 410, 6 South. 670; State v. Clark, 46 La. Ann. 704, 15 South. 83; State v. Thomas, 50 La. Ann. 148, 23 South. 250; State v. Wright, 104 La. 45, 28 South. 909; State v. Hicks, 113 La. 779, 37 South. 753.

When accused is convicted of manslaughter on an indictment for murder, he is thereby acquitted of murder, and can never be again convicted of that offense upon the same facts. State v. Wooten, 136 La. 560, 67 South. 366.

When an accused, convicted of manslaughter under a charge of murder, obtains a new trial on appeal, and the case is remanded, the lower court properly refuses to strike from the indictment the words "willfully, feloniously, and of his malice aforethought," together with the word "murder," before entering upon the second trial for manslaughter, the court having fully explained to the jury that the accused was no longer charged with murder; and in such a case a verdict of manslaughter may be found by nine of the jurors concurring, regardless of the fact that the new trial was on the original indictment. And where a full explanation of the legal situation is given by the court to the jury, an accused is not prejudiced by the reading of the indictment for murder to the jury. State v. Wooten, 136 La. 560, 67 South. 366; State v. Smith, 49 La. Ann. 1515, 22 South. 882, 62 Am. St. Rep. 680; State v. Byrd, 31 La. Ann. 419; State v. Dunn, 41 La. Ann. 610, 6 South. 176; State v. Evans, 40 La. Ann. 216, 3 South. 838.

[13] We therefore conclude that, as the prosecution for murder was abandoned in this case, nine of the jurors concurring could legally return a verdict of manslaughter under the original indictment.

## Bill of Exceptions No. 4.

[14] This bill was reserved to the reading of the indictment to the jury charging defendant with murder, on the ground that defendant was prejudiced thereby. The per curiam to this bill shows that the district attorney read to the jury the indictment as drawn and presented by the grand jury, but explained to them that the defendant was being tried only for manslaughter, and that the court instructed and charged the jury to that effect. Under the authorities cited under Bill No. 3, no prejudice or injury resulted to the accused.

## Bill of Exceptions No. 5.

[15] Counsel for defendant objected to the district attorney reading section 785 of the Revised Statutes in connection with the reading of the bill of indictment, for the reason that the reading of said section was prejudicial to accused, as it presupposed the charge of murder, and the section only authorized the jury to convict under a charge of murder. This bill is disposed of under the authorities referred to in Bill No. 3, both the trial judge and district attorney having explained to the jury that defendant was on trial for manslaughter only. The per curiam to this shows that the trial judge instructed the jury fully as to the crime of manslaughter.

## Bill of Exceptions No. 6.

[16, 17] The district attorney asked a state witness the question: "Why did you run out of there so fast, Leopold?" The question was objected to by counsel for defendant because the answer would be giving only his opinion and was irrelevant. The objection was overruled. The witness answered: "Because I knew what was going to happen. Q. How did you know what was going to happen? (The same objection and same ruling by the trial judge.) A. I knowed when he said, 'I

get my gun and I'll kill you,' I knew what was going to take place."

These threats were admissible to rebut the plea of self-defense tendered by defendant in this case, as the burden is upon the state to prove beyond a reasonable doubt that the killing was not done in self-defense, but was willful and felonious. State v. Ardoin, 128 La. 14, 54 South. 407, Ann. Cas. 1912C, 45; State v. Varnado, 128 La. 883, 55 South. 562; State v. Herring et al., 131 La. 972, 60 South. 634.

### Bill of Exceptions No. 7.

[18] The coroner was asked on direct examination by the state's attorney if the coroner's jury brought in a verdict. This question was objected to by counsel for defendant on the ground that the report of the coroner is the best evidence, and on the further ground that the coroner's jury report cannot be offered in evidence. The objection was overruled by the trial judge, and the coroner answered the question, "Yes." The bill fails to disclose the nature of the coroner's verdict, or that the coroner attempted to state what the verdict was. No prejudice to the accused is shown under this state of facts.

### Bill of Exceptions No. 9.

[19] Counsel for defendant requested the court to have that phase of the testimony of the witness Tell, relative to the drinking of wine in the soft drink stand conducted by defendant, taken out of the presence of the jury. The state objected, and the request was denied by the trial judge.

We know of no law that requires the district judge to have the testimony of a witness as to any particular point taken out the presence of the jury. It is a matter left to his discretion. Counsel for defendant has no real ground for complaint as to this bill, as the testimony of Tell was taken before the jury in open court and is in the record in the case.

153 LA.—29

### Bill of Exceptions No. 10.

[20] This bill was reserved by counsel for the defendant to the question asked the state witness Tell on his examination in chief: "Was anything said or anything done that you saw?" This question was objected to by counsel for defendant for the reason that it was immaterial and irrevelant and not a part of the res gestæ, and had nothing to do with the killing. The witness answered:

"We were sitting at a table drinking wine. Q. Who was drinking wine with you? A. Mr. Reynolds (deceased), and I got the wine first. Q. Where did you get it? A. In Vial's (defendant's) place. Q. How long was that before any one else came in? A. Mr. Kelly came in while we were drinking the wine. Q. How long did he stay there? A. He drank a glass of wine with us, and he sat down and we had another glass, the three of us together. Q. Then what happened? A. Mr. Reynolds put a dollar on the table to pay for the wine, and Mr. Kelly put a dollar down, but Vial wouldn't take either dollar."

The entire testimony of Tell is annexed to the bill of exceptions in this case, and is to the effect that deceased walked out to an automobile with him, after drinking the wine, and told him to wait a few minutes as he wished to go back to Vial's place and collect some money; that, shortly after deceased entered, witness heard some loud talking, and went into the place. Deceased had just gotten up from the floor, and witness heard deceased say to the wife of the accused, "Your husband has mistreated me," and told her to tell her husband to come out and talk to him like a man, pointing, at the same time, to the place where he had been struck. Deceased at the time was standing in the middle of the floor with his pistol in his hand. Witness and Kelly persuaded deceased to put up his pistol, and they were nearing the door, when one of the sons of deceased came into the room and said to his mother: "Mamma, Papa says get out of the way." At this time, deceased's pistol was in his pocket. As de-

ceased was stepping out of the door, defendant deliberately shot him down.

Under this state of facts, it is frivolous to argue that the jury convicted the defendant through prejudice, because the state witness testified that he had given them some wine in his place of business, and not because of the facts of the case directly relating to the homicide.

The drinking of the wine was mentioned by the witness incidentally, and as a mere link in the chain of his testimony. It was a part of what had transpired shortly before the killing, and we agree with the trial judge that witness' testimony as to the drinking of the wine did not prejudice the accused before the jury.

### Bill of Exceptions No. 11.

[21] This bill was reserved to the question propounded by the state to the witness Tell: "When you left the place and went to the automobile what did Lou Reynolds Young (deceased) do?"

To this question the witness answered:

"He walked on out to the side of the automobile and spoke to us and he said, 'Wait a minute Charley, I want to go in here and collect a few dimes or dollars.' I didn't get just which he said."

Counsel objected to this testimony for the reason that it was a statement made out of the presence of the defendant.

This testimony is original evidence, and not hearsay. Its object was to prove the purpose of deceased at the time he returned to the place of business of the accused, to show that deceased did not intend to attack accused or his wife, but that his mission was lawful and peaceful, the collection of a debt due by accused to him.

The wife of the accused testified that deceased had attacked her on his return to the building. The accused pleaded justification for the killing on the ground of his right to protect his wife. The burden rested upon the

state to prove that the homicide had been committed feloniously, and not in self-defense.

The declaration of the deceased, made immediately before the tragedy, of his lawful purpose in returning to the building negatived any idea of an intent upon his part to attack either the accused or his wife, and tended to rebut the testimony in support of the plea of self-defense made in this case, by showing the improbability that the accused was the assailant. This testimony was therefore material and admissible.

The deceased being removed as a witness by death, the best proof of the words spoken by him is the testimony of those who heard them spoken.

"Ex parte declarations of a deceased person as to his physical or mental condition, purpose, and intent are called 'natural evidence,' and are admissible as original evidence." Wharton, Crim. Ev. vol. 1 (10th Ed.) § 237a, p. 467.

This testimony was therefore properly admitted, although the statement of the deceased was made out of the presence of the accused.

### Bill of Exceptions No. 12.

[22] Mrs. Vial, wife of defendant, testified that her husband did not owe the deceased, Lou Reynolds Young, anything, and that her husband did not have any boats belonging to deceased. In order to rebut this testimony, Mr. Campus, a state witness, was asked if he had heard any conversation between deceased and defendant in regard to the rental of any boats. The witness replied in the affirmative, without detailing what was said, and stated further that he knew of his own personal knowledge that deceased had left some boats with defendant to use in his crabbing business. It must be remembered, in this connection, that there was in evidence before the jury the fact that deceased had stated that Vial, the defendant, was indebted to him, and that he had returned to Vial's place of busi-

ness to collect this debt. The wife of defendant, in her testimony in his behalf, put at issue the truth of this statement for the first time. It was therefore relevant and material that her testimony should be rebutted; the theory of the state being that the difficulty arose over the collection of a debt due by defendant to deceased for the use of his boats, while the testimony of the wife of defendant was to the effect that the difficulty arose because the deceased had used violence towards her, and that she had called for the assistance of her husband, who came to her defense. The testimony was therefore admissible to sustain the theory of the state as to the origin of the difficulty, and thereby prove that the plea of self-defense based upon an attack by deceased upon defendant's wife was a fabrication.

### Bill of Exceptions No. 13.

[23] Counsel for defendant objected to the following question propounded by the state to Emile Vial, Jr., witness for defendant: "What caused the adenoids and tonsil trouble?" The record fails to disclose the answer of the witness to this question. If bill fails to show that witness answered the question, no prejudice whatever to defendant is disclosed. State v. Stanley, 134 La. 131, 63 South. 850; State v. Munlin, 133 La. 63, 62 South. 351; State v. Le Blanc, 116 La. 822, 41 South. 105.

### Bill of Exceptions No. 14.

[24] The district attorney asked Mrs. Emile Vial, wife of defendant, on cross-examination: "Why didn't he get you some help?"— referring to her son. (The question was objected to by counsel for defendant on the ground that nothing was asked her on examination in chief about her son's getting her help.) In reply to the question, witness answered:

"I don't know. Q. You don't know why either of your sons didn't bring you help? A. No, sir.

Q. Do you know who was in the garage back of the house? A. No, sir. Q. If there had been any one in there, could they have heard you when you say you hollered? A. Yes, sir; my husband heard me next door."

The plain purpose of this cross-examination was to test the credibility of the witness, for the reasons already assigned in Bill of Exceptions No. 12.

The state must confine itself, in cross-examining defendant's witnesses, to matters testified to in examination in chief; however, when the purpose is to test the credibility of the witness, this rule does not preclude the cross-examination of a witness upon matters not touched upon in his examination in chief. State v. Garner, 135 La. 748, 66 South. 181; State v. Willingham, 33 La. Ann. 537; State v. Gregory, 33 La. Ann. 737; State v. Johnson, 48 La. Ann. 437, 19 South. 476.

### Bill of Exceptions No. 15.

[25] In this bill defendant's counsel charges that the court forced his client to proceed with the trial with a sick juror on the panel, over the protest and objection of counsel. The juror stated to the court that he felt that he could go ahead with the case, unless he got worse, and the trial judge requested the juror to make it known to the court if he should feel that he was unable to go on with the trial. The juror went through the balance of the trial of the case without complaint or asking for an adjournment. He was, moreover, in favor of an acquittal of the defendant, and so voted. This bill is without the slightest merit.

### Bill of Exceptions No. 16.

[26] One of the counsel for the state, according to the per curiam of the trial judge, made the following statement during his argument to the jury: "I have accepted employment from the citizens down there to appear in this case." This language was objected to by counsel for defendant. The grounds of

objection are not stated in the bill, and no prejudice is alleged or shown. No action was requested on the part of the judge a quo, and none taken by him, except to overrule the objection of counsel without comment. The bill is wholly without merit.

### Bill of Exceptions No. 17.

[27] This bill was reserved to the refusal of the court to give to the jury the following special charge:

"I charge you, gentlemen of the jury, that, if you believe from the evidence that defendant brought on the difficulty, and was the aggressor in the beginning, and retreated from the difficulty, his right of self-defense is revived, and he has a right to defend himself, his home, and his family."

The trial judge refused to deliver this special charge to the jury for the reason that it was covered by his general charge, was not sufficiently clear, and would tend to mislead the jury.

This charge is covered by the general charge on page 95 of the transcript, in which the law as to the aggressor and the restoration of his right of self-defense after retreat is correctly stated. The special charge is misleading as under it a retreat in bad faith and for the purpose of taking advantage of the deceased would restore to an aggressor his right of self-defense. In the case of the State v. Kellogg, 104 La. 594, 29 South. 291, this court said:

"Nor can it be denied that the authorities concur to the effect that the rights of self-defense revive in favor of the original aggressor only after he has abandoned his purpose, and has withdrawn, and has clearly made known his desire for peace to the other party, and is then pursued: and that a mere momentary cessation of hostilities, with no bona fide clearly expressed intention to withdraw from the conflict, will not excuse what he afterwards does on the ground of self-defense."

### Bill of Exceptions No. 18.

This bill was reserved to the charge of the court to the jury that nine of their number could render a verdict. The charge was correct. This matter has been fully discussed under Bill of Exceptions No. 3.

### Bill of Exceptions No. 19.

This bill was reserved to the overruling of a motion for a new trial. The errors complained of in said bill have been reviewed in this opinion, except the following: (1) That the public mind was poisoned by publications in a certain newspaper published in Covington, La.; (2) that the motion in arrest of judgment was erroneously overruled; (3) that Felder Fitzmorris answered falsely on his vior dire as a juror that there was no reason why he could not make a fair and impartial juror, when, in truth and in fact, said juror, before the trial, had publicly stated that "he thought Vial was guilty and should be convicted."

[28, 29] If defendant could not obtain an impartial trial in the parish wherein the indictment was pending, by reason of prejudice existing in the public mind caused by articles published in a newspaper in said parish, his remedy was to apply for and obtain a change of venue before trial, and not wait until after verdict and sentence before complaining of the alleged prejudice against him. We find no proof of prejudice in the record, except the articles themselves appearing in the newspaper. It is to be presumed that defendant would not have risked a trial at all, without applying for a change of venue, if there had existed, in fact, any general prejudice against him in St. Tammany parish. State v. Risso, 131 La. 994 (3), 60 South. 625; R. S. 1870, § 1022.

The motion in arrest is based upon the fact patent on the face of the record that defendant was tried for manslaughter under an indictment for murder, that he was convicted by the concurrence of nine jurors, etc. These matters have already been discussed and disposed of in this opinion under Bill of

Exceptions No. 3, and it is unnecessary to review them here.

[30] The testimony in the case fails to prove that the juror Fitzmorris answered falsely on his voir dire.

To maintain a motion for a new trial on the ground of incompetency of a juror, the defendant should prove: (1) That the juror was incompetent; (2) that that fact was unknown to defendant and his counsel until after verdict; (3) that the juror was questioned as to his competency on his voir dire, and answered that he was competent. State v. Latham, 124 La. 883, 50 South. 780; State v. Nash. 45 La. Ann. 1144, 13 South. 732, 734.

The motion for new trial fails to allege, and there is no proof in the record to show, that the incompetency of the juror was not known to defendant and his counsel prior to verdict. This averment and proof is essential, and its omission is fatal to the motion.

### Bill of Exceptions Nos. 20 and 21.

These bills relate to testimony taken on the trial of the motion for new trial as to the incompetency of the juror Fitzmorris and were reserved to the ruling of the trial judge striking out certain testimony as hearsay. As the motion for new trial was fatally defective in that it failed to allege that the incompetency of the juror was not known to defendant and his counsel prior to verdict, it is unnecessary for us to review this ruling, and to consider the effect of such evidence if admitted as proof.

### Bill of Exceptions No. 22.

This bill was reserved to the action of the court in overruling the motion in arrest of judgment, and has been already considered under Bill of Exceptions No. 19, reserved to the overruling of the motion for a new trial.

[31] We find a number of special charges in the record from pages 97 to 103, inclusive, of the transcript. No bill was reserved to the refusal of the court to deliver any of these special charges to the jury at the time they were presented and refused, and the mere fact that such special charges, at the request of counsel for defendant, have been attached to, and made a part of, his motion for a new trial does not authorize this court to pass upon them in this case.

It is well settled that a motion for a new trial cannot be made to serve the purpose of a bill of exception seasonably taken. State v. Hill, 122 La. 711, 48 South. 160; State v. Gebbia, 121 La. 1086, 47 South. 32.

The conviction and sentence appealed from are therefore affirmed.

O'NIELL, C. J., dissents from the ruling, on Bill No. 11, that hearsay evidence is admissible if the person quoted is dead.

DAWKINS, J., concurs in the decree.