257 So.2d 400 (1972)
260 La. 768
STATE of Louisiana
v.
Robert Howard COOLEY.
No. 51324.
Supreme Court of Louisiana.
January 17, 1972.
Rehearing Denied February 21, 1972.
Jack L. Simms, Jack L. Simms, Jr., Leesville, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Robert Howard Cooley was indicted for murder by the Vernon Parish Grand Jury for the October 23, 1969 slaying of Carl Proegler, a United States Army sergeant stationed at Fort Polk, Louisiana. The deceased *401 was en route to visit a soldier friend, Jerry Rayborn, in the community of Slagle, Louisiana. Defendant pursued the deceased at a high rate of speed in his truck to the Rayborn home. Defendant thereafter jumped from his truck with shotgun in hand, went to the deceased's car, pointed the shotgun in the center of the deceased's chest and remarked, "Nobody throws a finger at me and gets away with it." The two then argued. Defendant pulled the trigger fatally wounding Proegler. Defendant then left the scene in his own truck.
Bill of Exceptions No. 1 was reserved to the trial court's refusal to sustain a motion for a new trial on the ground that the verdict returned by the jury finding the defendant guilty of manslaughter on an indictment for murder was a compromise, pure and simple, there not being one scintilla of evidence to show that the defendant was guilty of manslaughter. That is, he contends that the record in the case is devoid of any evidence tending to show that the deceased did anything to the defendant that would have produced sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of self control and cool reflection.
There is no merit to this bill. As stated by this court in State v. Vial, 153 La. 883, 894, 96 So. 796, 800:
"Under our peculiar jurisprudence, arising from the fact that on trials for murder the jury may find the prisoner guilty of manslaughter, although the evidence may show him to be guilty of murder, it is necessarily true that a verdict for manslaughter operates as an acquittal of the charge of murder, especially as it is the mandatory duty of the trial judge, whether so requested or not, to charge the jury that they may return a verdict for the lesser crime, regardless of the fact that the evidence may prove the graver offense to have been committed. State v. Cook, 117 La. 114, 41 So. 434; State v. O'Conner, 119 La. 464, 44 So. 265; State v. Ford, 37 La.Ann. 443; State v. Brown, 40 La.Ann. [725], 727, 4 So. 897; State v. Brown, 41 La. Ann. 410, 6 So. 670; State v. Clark, 46 La.Ann. 704, 15 So. 83; State v. Thomas, 50 La.Ann. 148, 23 So. 250; State v. Wright, 104 La. [44], 45, 28 So. 909; State v. Hicks, 113 La. 779, 37 So. 753."
Our legislature has seen fit to make the crime of manslaughter responsive to the charge of murder. C.Cr.P. art. 814. It has historically been so. Under R.S. 1870, § 785, manslaughter was made a lesser included offense to the charge of murder.
"Murder is a felonious homicide committed with malice aforethought. Manslaughter is a felonious homicide committed, without malice aforethought, in the heat of passion and upon adequate provocation. Manslaughter is included in the charge of murder, and, by express statute on the subject, it is provided that on all trials for murder the jury may find the prisoner guilty of manslaughter. R.S. 1870, § 785; McClain, Cr.Law, vol. 1, § 338.
"Malice aforethought is an essential element of the crime of murder. It is the aggravating element which raises a felonious homicide to the higher grade of murder. When this element is wanting, the homicide, if unlawful, is still felonious, but is reduced to the lower grade of manslaughter. In the case of State v. Fontenot, 131 La. 60, 58 So. 1033, we said:
"`The state had the right to abandon the charge of murder and try the accused for manslaughter. Why should the accused complain of being relieved of all chance of conviction of the greater offense?'
"In State v. Vaughn, 145 La. 31, 81 So. 745, the district attorney abandoned the charge of murder, after the jury had been impaneled, and proceeded with a prosecution *402 for manslaughter under the indictment. This court held:
"`It is well settled that the state may, at any time during a prosecution for a crime in the nature of which are included all the elements of a less serious offense, abandon the prosecution for the graver crime and proceed with the prosecution for the less serious one.'" State v. Vial, 153 La. at 893-894, 96 So. at 800.
Today, under our peculiar set of statutes, a person can plead guilty to the crime of attempted murder under an indictment for murder, provided such is agreeable to the district attorney, (C.Cr.P. art. 487(B)), even though attempted murder is not a responsive verdict to murder under C.Cr.P. art. 814. Prior to the enactment of C.Cr.P. art. 487 (as amended), one could still plead guilty to the lesser offense of attempt under R.S. 14:27 although not a responsive verdict. R.S. 14:27 in pertinent part provides:
"An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt."
If there is sufficient evidence in the record to support a conviction for a greater offense (which includes the one for which the defendant is convicted), the evidence necessarily and automatically will support a conviction of the lesser offense which has been made responsive by legislative action.
Bill of Exceptions No. 2 was reserved to the trial court's failure to maintain a motion to suppress a certain 12 gauge shotgun which was allegedly seized illegally by the Vernon Parish sheriff's deputies. The shotgun was introduced in evidence at the trial. The trial judge in his per curiam to the bill stated that he thought that the defendant's wife had acquiesced in the actions of Deputy Joe Parker when he took the gun into his possession and that such amounted to consent.
The arrest of the defendant at his home was lawful. At the time of the arrest, the officers observed a shotgun in the corner of one of the rooms. One officer picked up the gun and smelled it. He testified that it smelled as though it had been recently fired. However, they were under the impression at that time that the crime had been committed with a rifle and for that reason did not take the shotgun with them when they took the defendant to jail. Shortly after the defendant was taken to jail, the officers were advised that the decedent had been killed by a shotgun blast to the abdomen.
Deputy Joe Parker returned to the defendant's home. Mrs. Cooley answered the door. Deputy Parker told her how sorry he was about everything and asked where the gun was. Mrs. Cooley told him and he picked it up and left with it.
In examining the record before us, we find that the defendant never contends that his wife did not consent to the seizure of the shotgun. The closest that defendant ever comes to contending that there was no consent is in his brief addressed to this court when he says: "He [Joe Parker] never requested permission of Mrs. Cooley to search for the weapon, never explained her constitutional right to demand that he get a search warrant to search the premises but just went in, got the shot gun and shell that had been in the gun earlier, and left on his return trip to the sheriff's office in Leesville."
Defendant cites State v. James, 246 La. 1033, 169 So.2d 89, rev'd James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30, and State v. Wells, 253 La. 925, 221 So.2d 50, for the proposition that the seized evidence was inadmissible because the seizures were illegal. We find that the two cases are not applicable.
In James, the seizure was made at James' residence which was two blocks in distance *403 from the point of the arrest. The police had no search warrant. The United States Supreme Court held that "A search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest."
In Wells, a search and seizure was made by the police upon a search warrant that issued without a showing of probable cause. The court accordingly reversed.
Neither is Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 applicable. The United States Supreme Court there held that a hotel clerk could not consent to a search of a hotel room because the clerk had no authority to authorize the search and because a hotel room is constitutionally protected against unreasonable searches and seizures.
Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, is not inapposite.
In State v. Comeaux, 252 La. 481, 494, 211 So.2d 620, 624, this court said:
". . . But we agree with the State's other contention that the search made with the consent of the wife was lawful and the evidence obtained as a result thereof was properly admitted. The question of consent is purely a factual one . . ."
As the Supreme Court of Iowa said in the case of State v. Shephard, 255 Ia. 1218, 124 N.W.2d 712, 717:
"The 4th and 14th Amendments are not designed to help a guilty party escape the consequences of his act. Their purpose is to protect a person and his property from arbitrary and unreasonable searches and seizures. It is the `right of privacy' that is protected. The fact that the invasion of this right has on occasions resulted in the freeing of a party who might actually be guilty of crime is incidental. Therefore if the party who has possession or control of the premises and property voluntarily consents to a search, the right of privacy is not invaded and the fact the search may disclose evidence tending to incriminate an absent party who may have an equal right to possession or control does not affect the reasonableness or legality of the search."
We hold, therefore, that under the facts presented in this case, the actions of defendant's wife constituted consent to the seizure by Deputy Parker of the shotgun. There is no merit to Bill of Exceptions No. 2.
The conviction and sentence are affirmed.
BARHAM, Justice (dissenting).
I cannot agree with the majority's disposition of Bill of Exceptions No. 2, reserved to the refusal of the trial court to grant a motion to suppress as evidence a 12-guage shotgun alleged to have been unconstitutionally seized. The seizure was made without a search warrant. At the hearing on the motion to suppress only two witnesses testified, the wife and the brother of the defendant, who were called by the defendant. The State presented no evidence. The wife stated that police officers came to their home, questioned her husband, and took him away with them. The following is all of her testimony about the return of one of the officers and his seizure of the gun:
"Q. When did you see this officers again?
"A. About fifteen or twenty minutes later.
"Q. Who did you see?
"A. Joe Parker.
"Q. Was he by himself?
"A. Yes.
"Q. What was the nature of his visit?
"A. Well, he came in and sat down and started asking me questions about our *404 personal life and our income and several different things about Robert and me and first one thing and then another.
"Q. Just questioned you, in other words?
"A. Yes.
"Q. Is that correct?
"A. Yes.
"Q. When did he make mention of a shotgun?
"A. Well, he had been there about ten minutes and he asked me where the gun was at.
"Q. He said, `Where is the gun?'
"A. Yes.
"Q. What did you tell him?
"A. I told him it was in the corner over there by the door; He had just come through the door.
"Q. When you told him that what did he do?
"A. He went over there and picked it up and asked me where the shell was at.
"Q. And what did you do?
"A. I took the shell out of my housecoat pocket and handed it to him.
"Q. He just asked you where the gun was and you told him where the gun was and he went and picked it up, is that correct?
"A. Yes.
"Q. Did he ever present you with a search warrant?
"A. No.
"Q. At the time they came to arrest Robert did they present you with a search warrant?
"A. No.
"Q. They didn't seize the gun at the time they arrested Robert, did they?
"A. No.
"Q. After Mr. Parker took the gun did he leave or did he ask you some more questions?
"A. Well, he told me how sorry he was everything had happened and he says if there was anything he could do to help to let him know, he would be glad to help in any way he could.
"Q. And then he took the gun and left, is that correct?
"A. Yes.
"Q. Did you actually give him the gun or did he just go take it?
"A. He asked me where it was at and he went over there and picked it up and told me how sorry he was and he left. I never told him to take the gun, he never said, `I've got to take the gun', or anything, or `I'm going to take the gun', he never said anything like that.
"Q. Once he had the gun in his possession he left, is that right?
"A. He got the gun and told me how sorry he was and left."
After defendant was taken into custody, the officers stopped at the home of defendant's brother so he could accompany defendant. The brother testified that at that time the officers did not have the shotgun, and that he overheard the officers saying they had not taken defendant's gun because the victim had been shot with a rifle. He further testified that later one of the officers came into the sheriff's office with defendant's shotgun.
This evidence does not support the holding of the majority that "under the facts presented in this case, the actions of defendant's wife constituted consent to the seizure by Deputy Parker of the shotgun". When consent is asserted as the basis for a search and seizure in lieu of a search warrant, the burden of proof rests with the prosecutor to establish by clear and convincing evidence that the consent was in *405 fact freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Andrus, 250 La. 765, 199 So.2d 867; State v. Welch, 256 La. 1, 235 So.2d 72.
When the burden of proof shifted to the prosecutor at the hearing on the motion to suppress after it was acknowledged that there was no search warrant, he was required to present competent evidence to show that the wife had consented to the taking of the shotgun. Yet the State offered no evidence in support of its position.
It is apparent from the testimony offered by the defense that when the officer returned to defendant's home, he knew of the evidence he wished to seize and knew that it was in defendant's home, and that he reentered the house for the purpose of seizing that evidence, the shotgun. He had made no attempt to secure a search warrant, nor did he obtain the consent of either the defendant or the defendant's wife. In fact, not the slightest hint of a request for permission to either search or seize can be gleaned from the previously quoted testimony. See State v. Andrus, supra.
It must be said for the officer that his conduct toward the defendant's wife was not harsh or abusive, and from her testimony he was sympathetic. This, however, does not make his conduct in effecting the seizure constitutional. Here the wife volunteered no information about the evidence, and did not voluntarily produce and deliver any of the evidence. Her testimony that she had the shotgun shell in her pocket during the conversation of almost 10 minutes and gave it to the officer only upon inquiry is indicative of an intent not to volunteer any evidence. Indeed, it suggests she wished to suppress the evidence.
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, the court held evidence to be admissible in a criminal prosecution not under a constitutional search and seizure but under a finding of fact that in a spirit of cooperation, in a hope of being helpful to her absent spouse, the wife had given the evidence to the police. The determination of Coolidge v. New Hampshire is inapposite, but the court's reasoning in reaching that determination differentiates the facts there from those of the present case, and is dispositive of this case. See the court's discussion in Part III(B). Here we do not have the cooperative wife with the motive of "clearing her husband" and with a belief "that she had nothing to hide". The conduct in this case is not "a spontaneous, good-faith effort by his wife to clear him of suspicion".
It was said in Coolidge: "* * * There is not the slightest implication of an attempt on their part to coerce or dominate her, or, for that matter, to direct her actions by the more subtle techniques of suggestion that are available to officials in circumstances like these." Under the best appraisal of the officer's conduct here, his manner was certainly more than merely suggestive in securing the evidence, and certainly under the circumstances he dominated the situation. My finding that the evidence suggests that the wife intended to conceal and suppress the evidence and delivered it only when she felt she had no alternative will not permit a conclusion that she consented to the seizure. Under this conclusion the officer's actions constitute "unconstitutional police conduct", and the fruits of those actions should have been suppressed.
It is difficult to pen a dissent in a case such as this. In this criminal case where we are seeking truth in order to mete out justice to one who has violated a basic minimal standard of conduct, certainly truth would be better served if the evidence is considered. But the United States Supreme Court has established now through a long line of cases beginning with Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961), that the Fourth Amendment of the United States Constitution[1] *406 embodies not only the right of the people to be secure in their persons, houses, papers, and effects but also embodies the sanction of suppressing in criminal proceedings any evidence procured by police violation of this constitutional right.[2] Under this United States Supreme Court construction a double-bladed constitutional mandate forces this dissent.
The only searches and seizures made without search warrant which are considered "reasonable" are those made incident to a lawful arrest, those made under exigent circumstances or in hot pursuit, or those made with voluntary and knowing consent or waiver. No other searches and seizures are held to be reasonable no matter how practical the result may appear. Unless some other sanction is found to protect this constitutional right, the exclusionary rule must prevail. I therefore respectfully dissent.
NOTES
[1] Louisiana Constitution Article 1, Section 7, affords the same protection.
[2] The late Mr. Justice Black, concurring in Mapp v. Ohio, concluded that "when the Fourth Amendment's ban against unreasonable searches and seizures is considered together with the Fifth Amendment's ban against compelled self-incrimination", the exclusionary rule is constitutionally required.