PROVOSTY, J.
[1] The accused applied for a continuance on the ground of the absence of one of his witnesses ;• and the court refused it, because the testimony of the absent witness would bear upon an unimportant point and would be merely cumulative. The ruling was correct. Marr’s Crim. Juris, p. 606; State v. Primeaux, 39 La. Ann. 673, 2 South. 423; State v. Hillstock, 45 La. Ann. 299, 12 South. 352; State v. Rodrigues, 45 La. Ann. 1044, 13 South. 802.
[2, 3] The indictment was for murder. A first trial upon it resulted in a verdict for manslaughter. This verdict, as has been frequently decided in like cases, had the effect of acquitting the accused of murder, and reducing the charge against him to manslaughter, and of precluding his ever "being tried again on the same facts for murder. State v. Byrd, 31 La. Ann. 419; State v. Dunn, 41 La. Ann. 610, 6 South. 176. A new trial was granted from this verdict. The accused,, before entering upon the second trial, moved to strike out of the indictment the words “willfully, feloniously, and of his malice aforethought,” together with the word “murder,” which, he said, were no longer responsive to the charge against him, and therefore were unnecessary and surplusa ge, and yet might prejudice his case before the jury, *563 since it would be informing them that tbe grand jury, after inquiry into tbe facts, had come to the conclusion that in killing the decedent he had acted maliciously and with •deliberation. The court having refused to strike the words out, the accused, on the same grounds assigned in the motion, objected" to their being read to the jury. This objection was overruled.
In State v. Smith, 49 La. Ann. 1515, 22 South. 882, 62 Am. St. Rep. 680, and cases ■there cited, it was held that an accused may be legally tried on an indictment that has thus been by a previous verdict reduced from murder to manslaughter, provided that full explanation of the legal situation be given to the jury (that is, that they be informed that the accused is no longer charged with having acted maliciously and deliberately); and the majority of the court think, therefore, that said motions were properly refused. The writer of this opinion, while concurring in the view that there is no ground for setting aside the verdict, thinks that the motions should have been granted, for the reasons set forth in the margin.
[4] The accused objected to any evidence being admitted of threats said to have been made by him against the decedent, as going to prove nothing more than malice and deliberation' — an element not contained in the crime of manslaughter, now the only charge against him.
The evidence was admitted for the purpose of showing which one (the accused or decedent) was the aggressor, on the occasion of the killing.
The learned counsel for accused argues that evidence of the previous relations of the parties is admissible only where there has been no eyewitness to the fatal affray; that it is admitted only ex necessitate, and is not admissible in a case like the present, where there were five bystanders who actually witnessed every detail of the occurrence and testified on the trial.
The per curiam of the trial judge is as follows:
“This testimony was admissible for the purpose of corroborating the statements of the state witnesses as to who began the difficulty; there being a conflict between the eyewitnesses for the state and the eyewitnesses for the defendant on this point. The same kind of testimony was offered by the defendant for the same purpose.”
This ruling was correct:
“There is a certain class of cases in which uncommunieated threats on the part of deceased are sometimes received in evidence in favor of a party charged with murder when accused sets up self-defense. The evidence is not received for the purpose of showing that defendant’s conduct was influenced by them (for a person cannot, of course, be influenced by a thing of which he has no knowledge), but to enable the jury to form its own conclusions as to who was the aggressor in the encounter which resulted in the homicide, when there is doubt on the subject.” Marr’s Orim. Juris. § 63, p. 97.
See, also, Wharton on Horn. § 247, p. 407; Johnson v. State, 66 Miss. 189, 5 South. 95; Wiggins v. People, 93 U. S. 465, 23 L. Ed. 941; Keener’s Case, 18 Ga. 194, 63 Am. Dec. 269; Arnold’s Case, 15 Cal. 476; Hawthorne v. State, 61 Miss. 749; Bell v. State, 66 Miss. 192, 5 South. 389; Prine v. State, 73 Miss. 838, 19 South. 711; Kendrick v. State, 55 Miss. 436.
There is nothing opposed to this in the case of State v. Lewis, 133 La. 1095, 63 South. 597. The question of who was the aggressor did not arise in that case. What was there said must be read in connection with the facts of the case.
[5] The judge charged the jury that nine of them concurring could find a verdict. The accused excepted to this charge on the ground that, the indictment being for murder, all 12 of the jurors would have to concur.
True, the indictment as presented by the grand jury was for murder, but, as amended by the verdict of acquittal of murder on the first trial and the finding for manslaughter, it was reduced to one for manslaughter, and, as such, came squarely within the constitutional provision (article 116) allowing a ver *565 diet to be found by nine of tbe jurors concurring in a case not capital.
Tbe next bill of exception bas reference to the jury having been allowed to take into their deliberating room tbe coat worn by tbe decedent and tbe pistol carried by him at the time of tbe killing. Tbe judge’s per curiam on this bill reads as follows:
“During the argument of the case M. Jones, one of defendant’s counsel, put the coat on and attempted to demonstrate to the jury how the testimony offered by defendant’s witnesses as to the killing was reasonable, and stated that he wanted them to take the coat and pistol into their deliberating room with them. The district attorney, in his argument, also put the coat on in order to demonstrate to the jury that the testimony offered by the defendant relative to the killing was unreasonable and impossible, and also told the jury that he wanted them to take the coat and gun into their room when they went in to deliberate. When the jury started out one of them asked for the coat and gun, and, after they had got into their deliberating room, M. Jones, the same attorney who had told the jury that he wanted them to take the coat and gun into their room with them, made objection to their being permitted to have them. The coat and gun had both been offered in evidence.”
[6, 7] Tbe jury, undoubtedly, are to try tbe case upon tbe knowledge obtained by them in open court, when tbe accused may have an opportunity, by cross-examination or otherwise, of correcting any false impressions that might be derived from the evidence adduced; and hence tbe objects in question should not have been allowed to be taken by them into their room ;• but, from the fact that tbe counsel for tbe accused expressed willingness in course of argument that this very thing should be done, we must infer, in tbe absence of all proof to tbe contrary, that no prejudice resulted therefrom to tbe accused. State v. Williams, 34 La. Ann. 959; State v. Bradley, 6 La. Ann. 554. It is not even shown that tbe jurors examined these objects after they bad taken them into their room; and, even if they did, tbe probability that they could have viewed them in other aspects than those soi fully presented to them by tbe counsel on each side in turn on tbe trial is very improbable. We find no good reason here for setting aside tbe verdict.
Finally it is contended that tbe appointment of tbe jury commissioners was invalid because it was made by tbe judge, and was not a judicial function, and entailed nullity upon all the subsequent proceedings. Whether these fatal consequences would follow is a question we need not consider, since we find no reason to reverse tbe recent ruling of this court to tbe effect that said function is judicial. State v. Jackson, 134 La. 599, 64 South. 481.
Judgment affirmed.
Note Annexed to Opinion.
If all the words asked to be stricken out of the indictment were stricken out the indictment would read that the accused did kill the decedent, and not that he did “unlawfully kill and slay” him, as it would have to read in order to comply with the requirement of section 1048, B. S., which prescribes the form of indictments for manslaughter. But I do not think that because this request to strike out could not be granted as made (that is to say, as a whole) was good reason for denying it altogether; or, in other words, for not granting it in so far as this could be done with no detriment to the prosecution and with benefit, perhaps, to the accused. The term “feloniously” includes unlawfully within its meaning (12 A. & E. E. of L. 1029); and the word “murder” includes the meaning of kill and slay. So that, by leaving these words in, the indictment would be sufficient without the words “and of his malice aforethought.” The latter words are not only not descriptive of manslaughter, to which, as an effect of the previous verdict, the charge against the accused was reduced, but are to some extent contradictory of it, since manslaughter is defined to be a killing without malice aforethought. Wharton, Crim. L. (2d Ed.) p. 597. The sole effect of striking out these now useless words would be to make the indictment conform to the truth; and conformity to the truth is a good thing always, as much so for the state in dealing with prisoners in her courts of justice as for man in every day life. If avoidable, the officer of the state should not be required to read to the jury that the accused acted of his malice aforethought, when, on the contrary, the real accusation is that he acted without malice aforethought.
As a reason for not thus purging the indictment of this now effete matter, the suggestion is made that, an indictment being the act of the grand jury, the court cannot amend it, ex *567 cept in so far as authorized by express statute to do so. But would a mere purgation of this kind be an amendment, in any proper sense of the term? In what respect would the indictment be different after this purgation from what it was before, in so far as concerns its sufficiency as an indictment for manslaughter? Was it not an indictment for manslaughter pure and simple before the purgation, and does it not continue to be such after the purgation? By the various statutes of jeofails and amendment (R. S. § 1047 et seq.) the court is now allowed to amend in favor of the prosecution in practically all matters not of substance. Would not the spirit of these statutes allow in favor of the accused an alteration of this kind, by which matter, which by operation of law has become effete, wholly useless,^ and yet may be prejudicial to the accused, is eliminated? I can see no good reason why not.
The practice under the old common law was for the courts to make amendments in mere matters of form. This practice was originally founded upon the express consent of the grand jury given beforehand in open court at the time they were sworn. 22 Cyc. 434. Whether the practice continued to be founded upon such consent, or grew to be founded upon a mere presumed consent, or to dispense altogether with this empty formality of a consent, I have no.t been able to ascertain. But why should such a consent be necessary? The indictment is not the property of the grand jury. It is but a means of bringing the accused to trial. In matters of substance it must be the work of the grand jury alone, because the Constitution so requires; but no good reason can be assigned why, in matters of mere form, the grand jury should be consulted. The truth and fact of the matter is that in all matters of mere form the indictment is the work of the district attorney who has prepared it, and not of the grand jury. To go through the ceremony of bringing the grand jury into court and obtaining its consent for the making of a change of this kind in the indictment would be worse than a useless formality; it would be a waste of time and a farce.
However, while I entertain these views, I concur with my colleagues in approving the learned trial judge in refusing the request, as he had no precedent for granting it, whereas he could reach approximately the same result by making full explanation to the jury — a course for which he had precedent. State v. Smith, 49 La. Ann. 1515, 22 South. 882, 62 Am. St. Rep. 680, and cases there cited. In these cases objection was made that the accused could not be tried for manslaughter on an indictment which, by a previous verdict, had been reduced, as in the present case, from murder to manslaughter; and the court held that he could, provided full explanation was made. These cases are authority for holding that, where full explanation has been made, there is not such prejudice to the accused as would justify the setting aside of the verdict.