### TRAPP v. TERRITORY OF NEW MEXICO.

(Circuit Court of Appeals, Eighth Circuit. July 12, 1915.)

No. 3777.

1. HOMICIDE ⊜190—EVIDENCE—UNCOMMUNICATED THREATS.

Evidence of uncommunicated threats of deceased against defendant's father, in whose defense he claims to have acted, is admissible as bearing on the probability of who was the aggressor; the evidence as to who fired the first shot, or made the first assault, being in conflict.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 399–413; Dec. Dig. ⊜190.]

2. HOMICIDE ⊜300—SELF-DEFENSE—POINT OF VIEW OF JURY—INSTRUCTIONS.

Defendant in homicide, claiming self-defense or defense of his father, is entitled to an instruction that in considering his guilt the jury should place themselves as nearly as possible in his situation at the time, and then consider and decide, from that station, whether or not the testimony established beyond a reasonable doubt that he did not believe, or did not have reasonable ground to believe, that deceased was about to kill or inflict great bodily injury on one of them; and it is not enough to in-

struct merely to acquit if the jury have reasonable doubt as to defendant having had a reasonable ground to apprehend design of deceased to so do

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. ☞300.]

3. HOMICIDE ☞174—EVIDENCE—FLIGHT.

The killing being admitted and established, and the only question being whether it was justified, evidence of his flight is irrelevant.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 359–371; Dec. Dig. ☞174.]

4. CRIMINAL LAW ☞351—EVIDENCE—FLIGHT.

It is only a flight to avoid arrest on a charge of a crime that is evidence of the identity of the person charged with being the perpetrator, when that question is in doubt, and not flight shown to be for another purpose.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 776, 778–785, 930–932; Dec. Dig. ☞351.]

In Error to the Supreme Court of the Territory of New Mexico.

Malcolm Trapp was convicted of homicide (16 N. M. 700, 120 Pac. 702), and brings error. Reversed, and new trial directed.

W. W. Gatewood, of Roswell, N. M., for plaintiff in error.

Frank W. Clancy, Atty. Gen., for the Territory of New Mexico.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. On January 4, 1910, Webb J. McAdams, a constable and deputy sheriff, and Clay Davidson, another deputy sheriff, went to the dug-out and home of John C. Trapp with a pretended warrant for his arrest that was illegal, and, after calling him to the door, he arose and started to the door, a colloquy arose between him and McAdams, when shooting commenced, and McAdams was killed in the affray by a shot fired by the defendant below, Malcolm Trapp, a son of John C. Trapp, about 21 years of age. At the time of the shooting John C. Trapp, his sons Malcolm, John, a boy about 19 years of age, and three younger sons were with him in his home, and there was evidence tending to show that shots were fired into it by McAdams and Davidson, and out of it by Malcolm Trapp and John Trapp. John C. Trapp, Malcolm Trapp, and John Trapp were indicted for the murder of McAdams, were tried, and John C. Trapp and John Trapp were acquitted, and Malcolm Trapp was convicted of manslaughter and sentenced to imprisonment at hard labor for not less than five years nor more than ten years. He has sued out a writ of error, and assigned many reasons why, in the opinion of his counsel, the Supreme Court of New Mexico should have reversed the judgment against him.

[1] He has specified as error the refusal of the court below to admit in evidence testimony of threats of McAdams against his father, John C. Trapp, which had not been proved to have been communicated to him, the defendant Malcolm Trapp. It is essential to a clear understanding of the question raised by this specification that the situation and relation of the parties at and preceding the shooting should

be in mind. These facts were disclosed by the evidence at the trial. There was positive testimony that on January 4, 1910, when the shooting occurred, the two deputy sheriffs who came to the dug-out fired the first shots, and there was positive testimony that Malcolm Trapp fired the first shot.. So that there was a direct conflict in the evidence on the issue which party was the aggressor. There was testimony that John C. Trapp had lived on the farm where the shooting occurred, three or four miles from Corona, nine years, that he had been engaged in truck farming, and that he had been a justice of the peace for a year during that time. There was testimony that McAdams was a constable and a deputy sheriff; that he had the reputation of being a violent and dangerous man; that in December, 1908, John C. Trapp killed a beef creature which he owned and had raised on his farm, brought the beef to Corona, and sold it; that McAdams arrested him for wrongfully selling the beef, and demanded that he should plead guilty; that he refused, was tried, and acquitted; that on June 3, 1909, John C. Trapp and his wife came to Corona, riding with Malcolm Trapp in their wagon; that McAdams, without any warrant, locked John C. Trapp up in a cell, and kept him there several hours on that day, although the justice of the peace warned him that he had no right to do so; that in November, 1909, John C. Trapp sued McAdams for this false imprisonment; that McAdams then told Mr. Gilbert, about November 27, 1909, shortly after that suit was brought, that Trapp would not live long enough to see the outcome of it; that he was going to get him, and take him up on the flat, and shoot his head off; that Gilbert talked to him, and told him not to do such a thing, and he replied that he was sure he was going to kill him; that on December 28, 1909, Davidson arrested Trapp in Roswell, a place about 115 miles from Corona, to which Trapp had moved his wife and five of his children, and to which he was about to remove the remainder of his family, for having that gun in his wagon on June 3, 1909, and Trapp gave bond to appear in Corona to answer the charge on January 4, 1910; that he appeared there on that day, took a change of venue, and gave a bond, with Mr. Jump and Mr. Holzman as sureties; that he then went home with his sons Malcolm and John, built a fire, and ate supper; and that they were sitting before the fire in their dug-out when McAdams and Davidson came with the illegal warrant, called John C. Trapp, who arose and entered into a colloquy with McAdams, and the shooting commenced. In the course of the trial Mr. Jump, who served the summons on McAdams in Trapp's suit for false arrest about November 26, 1909, testified that McAdams then said to him that he would have Trapp in the Lincoln jail inside of 24 hours, and Mr. Thompson testified that on November 28, 1909, McAdams told him that he was going out to arrest Trapp and take Cleve Hibbler along; that he told McAdams that he thought it was an imprudent thing for him to take Hibbler along, and McAdams answered, "I am taking out Hibbler, and get him and Trapp into a fight and kill one another." The court struck out this testimony, because there was no proof that these threats were communicated to the defendant Malcolm Trapp; but there was uncontradicted evidence that

McAdams and Hibbler went out to Trapp's place near Corona and inquired for him, but failed to find him on that November 28, 1909, when the statement to Thompson was made, and McAdams' statements, though uncommunicated, tended strongly to show which party was probably the aggressor on January 4, 1910, when McAdams next met Trapp, where he might, with possibility of escaping punishment, attempt to carry out his threats.

It is the general rule that on the trial for a homicide uncommunicated threats are not admissible in evidence, because such threats cannot have had any influence upon the mind or intent of the defendant. But there is an exception to this rule as well established as the rule itself. It is that where the alleged crime was committed in a sudden affray, and there is a conflict in the evidence upon the question, and there is doubt which party fired the first shot, made the first assault, or was the aggressor, uncommunicated threats of death or great bodily harm to the defendant, his father, or other near relative he claims to be trying to defend, are admissible in evidence, not on account of their influence on the mind or intent of the defendant, but because they tend to prove the probability that he who made the threats, rather than his opponent, fired the first shot, made the first assault or was the aggressor. Wiggins v. People, 93 U. S. 465, 467, 23 L. Ed. 941; Allison v. United States, 160 U. S. 203, 215, 16 Sup. Ct. 252, 40 L. Ed. 395; State v. Felker, 27 Mont. 451, 71 Pac. 668, 671; State v. Shadwell, 26 Mont. 52, 66 Pac. 508; State v. Hennessy, 29 Nev. 320, 90 Pac. 221, 225, 13 Ann. Cas. 1122; Wood v. State, 128 Ala. 27, 29 South. 557, 558, 86 Am. St. Rep. 71; Wharton's Criminal Evidence, § 757; Stokes v. People, 53 N. Y. 164, 13 Am. Rep. 492; Campbell v. People, 16 Ill. 17, 61 Am. Dec. 49; People v. Scoggins, 37 Cal. 676; Roberts v. State, 68 Ala. 156. The evidence at the trial and the charge of the court made the issue which party fired the first shot, or made the first assault, one of the most important in the trial; and this case, wherein a young man is claiming, not without substantial evidence to support that claim, that he committed the unfortunate homicide in his own home, in defense of his father against an attack of one who had repeatedly threatened his life, is one in which the defendant ought not to be deprived of any legal evidence presented in his favor. The rejection of the testimony of Thompson and Jump to the threats of McAdams was a fatal error in the trial of this case.

[2] Counsel for the defendant complains of the court's refusal to give his requested instruction:

"That in considering the guilt or innocence of the defendants, and of each of them, you should view the facts and circumstances of the case as nearly as you can from their respective standpoints, and put yourself as nearly as you may in their respective places, and see and consider the situation as in your judgment it must at the time have appeared to them, and if upon so doing you cannot say from all the evidence before you that you are convinced beyond a reasonable doubt of the guilt of some one or more of the defendants, then you should find him or them of whose guilt you are not convinced not guilty."

But the counsel for New Mexico argue that there was no prejudicial error in this refusal: (1) Because the requested instruction omits

the essential element of the defendant's belief and reasonable ground to believe that they were in imminent danger of death or great bodily harm when the homicide was committed, but that element was embodied in another request of defendant's counsel and in a portion of the charge given by the court; and (2) that the essence of the requested instruction was given to the jury in the eleventh paragraph of the charge, which reads, in this way:

"You are instructed that voluntary manslaughter is justifiable when committed by any person in the lawful defense of such person, or of his or her parent, brother, or child, when there shall be reasonable ground to apprehend a design on the part of the person slain, or of any one acting with him at the time of such design, to commit a felony upon, or to do some great bodily injury to, such person, parent, or brother, or child shall be at the time. Therefore, if from the evidence you have a reasonable doubt that, at the time of the killing of said Webb J. McAdams, said Malcolm Trapp had a reasonable ground to apprehend a design on the part of the deceased and said Clay Davidson, or either of them, to commit a felony upon said John C. Trapp, or do him some great bodily harm, or to commit a felony upon or to do either of the other defendants some great bodily harm, you will acquit the defendants."

A homicide, when committed by one in defense of himself, his parent, brother, or child, is undoubtedly justifiable, when he has reasonable ground to believe, and does believe, that the person slain is about to kill or inflict great bodily injury upon him, his parent, brother, or child, unless he takes the course he pursues, and unless the jury is satisfied from the evidence beyond a reasonable doubt that such person committed the homicide without such belief, or without reasonable ground therefor, it is its duty to acquit. It is not clear that this was the meaning or effect of the eleventh paragraph of this charge, and, however that may be, that paragraph fails, and so does the entire charge, to express the gist of the instruction requested by defendants' counsel. It fails utterly to convey the idea that in determining the questions whether or not the defendants had reasonable ground to believe and did believe that they were in imminent danger of the loss of life, or great bodily harm, from the deceased at the time they fired their shots, and that in order to prevent such death or harm it was necessary for them to fire, the jury should place themselves as nearly as they could in the defendants' situation at that time, and then consider and decide from that station, in view of all the facts and circumstances in evidence, whether or not the testimony established beyond a reasonable doubt that the defendants did not so believe, or did not have reasonable ground for such a belief. In view of this fact, the court should have given the instruction requested. Allen v. United States, 150 U. S. 551, 561, 562, 14 Sup. Ct. 196, 37 L. Ed. 1179; Hickory v. United States, 151 U. S. 303, 311, 14 Sup. Ct. 334, 38 L. Ed. 170; Wharton on Homicide (Bowlby's 3d Ed.) pages 455–458, par. 286; Territory v. Gonzales, 11 N. M. 301, 326, 327, 328, 68 Pac. 925. In Hickory v. United States, 151 U. S. 303, 316, 14 Sup. Ct. 334, 339 (38 L. Ed. 170), the Supreme Court said:

"As was said in Allen v. United States, 150 U. S. 551 [14 Sup. Ct. 196, 37 L. Ed. 1179], we do not think that the doctrine is practicable which tests the question whether a defendant was entitled to excuse on the ground of self-

defense, or exceeded the limits of the exercise of that right, or acted upon unreasonable grounds, or in the heat of passion, by the deliberation with which a judge expounds the law to a jury, * * * or with which judgment is entered and carried into execution."

[3] The court also erred in charging the jury that the flight of a person immediately after a crime has been committed with which he is charged, if you shall first find that there has been a crime committed, is a circumstance which the jury may consider in determining the probabilities for and against him; that is, the probability of his guilt or innocence. If a homicide had been proved or admitted, and the issue whether or not defendant Malcolm Trapp was the perpetrator had been in doubt, the instruction might have been appropriate and applicable. But when this charge was given to the jury, the fact that Malcolm Trapp shot and killed McAdams was admitted and established beyond doubt. The only question remaining was whether or not he was justified in killing him. His flight had no tendency to prove whether the Trapps or the deputy sheriffs fired the first shot, or committed the first assault, or whether or not Malcolm Trapp was justified in shooting McAdams.

[4] There is another reason why this instruction was erroneous. It is a flight to avoid arrest and trial on a charge of a crime that is evidence of the identity of the person charged with being the perpetrator, when that question is in doubt, and there was no evidence of any such flight in this case. The evidence was that John C. Trapp had moved his wife and five of his children to Roswell, and had gone there himself, leaving the remaining five of his children in the old home near Corona, before he was arrested at Roswell for carrying the gun in the wagon; that he had thereafter returned to Corona to answer that charge on January 4, 1910; that at the time of the shooting he and his five sons were in the dug-out near Corona; that immediately after the affray they were afraid of another attack by a mob, and the father and his two older sons went directly to Mr. Gatewood, Mr. Trapp's attorney in Roswell, told him what had happened and that Malcolm wanted to give himself up; that the attorney immediately telephoned the jailer or sheriff to come to his office; that the sheriff came, and Malcolm Trapp at once surrendered himself and was placed in jail.

The conclusion of the whole matter is that there was fatal error in the trial of this case, and in the decision of the Supreme Court of New Mexico affirming the judgment. Let the judgment of the Supreme Court and that of the trial court be reversed, and let the case be remanded, with instructions to grant a new trial.