### GRIFFIN v. UNITED STATES.
#### No. 9882.

United States Court of Appeals
District of Columbia Circuit.

Decided July 10, 1950.

Mr. Francis J. Kelly, Washington, D. C., with whom Messrs. James R. Reynolds and Joseph A. Barry, Washington, D. C., were on the brief, for appellant.

Mr. Charles B. Murray, Asst. U. S. Atty., with whom Mr. George Morris Fay, U. S. Atty., and Mrs. Grace B. Stiles, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, CLARK, and PROCTOR, Circuit Judges.

EDGERTON, Circuit Judge.

We affirmed appellant's conviction of murder in the first degree. 83 U.S.App. D.C. 20, 164 F.2d 903. The Supreme Court denied certiorari. 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137. The District Court afterward declined to grant a new trial on the ground of newly discovered evidence and we affirmed without opinion.[1] The Supreme Court granted certiorari and remanded the case to us "with instructions to decide, in the first instance, what rule should prevail in the District of Columbia" with respect to the admissibility of "uncommunicated threats" of the deceased against the accused. Griffin v. United States, 336 U.S. 704, 709–711, 715, 718, 69 S.Ct. 814, 93 L.Ed. 993. The ultimate question is whether the District Court erred in refusing to grant a new trial when it appeared that after the homicide an open penknife was found in the same trousers pocket of the deceased in which his hand

1. No. 9882, Griffin v. United States. We also dismissed, with an opinion which the Supreme Court noted, 336 U.S. at page 708, 69 S.Ct. at page 815, in deciding the present case, an appeal from the denial of a petition for a writ of habeas corpus. Griffin v. Clemmer, 83 U.S.App.D.C. 351, 169 F.2d 961.

was, and that the prosecution knew at the time of the trial that such testimony was available but neither produced it in court nor disclosed it to the defense.

The appellant shot and killed one Hunter as the outcome of a quarrel. Whether the shooting immediately followed the quarrel was in dispute. The accused claimed self-defense. He said Hunter "jumped up and started around the table, with his hand in his pocket, and told me he would kick my teeth out of my head." 336 U.S. at page 706, 69 S.Ct. at page 814. But the accused was the only witness who testified to any aggressive word or act of Hunter at the time of the shooting. Several eye-witnesses testified that the accused was the aggressor and Hunter made no move. The prosecution knew, but the defense did not, that a morgue attendant had said he found an open penknife in Hunter's pocket although playing cards were in his hand. The facts are more fully stated in the opinions of the Supreme Court and of this court.

The majority of the Supreme Court expressed no "preference among the competing rules about the admissibility of uncommunicated threats" and left us free to adopt any rule on this subject. 336 U.S. at page 715, 69 S.Ct. at page 819. By directing us to adopt and apply *some* rule on this subject the Court determined only that the subject is before us; in other words, that the evidence to be ruled upon is evidence of an uncommunicated threat. Because the Court determined this latter question we do not discuss it.[2]

█ The view that evidence of uncommunicated threats, including the evidence of Hunter's opened knife, should be admitted seems to us logical and humane. It is within the principle of admitting any type of evidence that may fairly be thought to have substantial probative value and is neither excluded by a settled rule nor particularly likely to be false, misleading, or unduly prejudicial. It is of course true that the apparent conduct of the deceased at the time of the homicide, rather than any concealed plan he may have had, bears directly on the question whether the accused acted in self-defense, but evidence that the deceased had a concealed plan of attack bears on the question what his apparent conduct was. We therefore adopt the following rule as the one we think should prevail in the District of Columbia. When a defendant claims self-defense and there is substantial evidence, though it be only his own testimony, that the deceased attacked him, evidence of uncommunicated threats of the deceased against the defendant is admissible. We agree with cases in which uncommunicated threats have been admitted although there were eye-witnesses.[3]

█ The question remains whether a new trial should be granted. In remanding the case the Supreme Court said: "Were the Court of Appeals to declare that the controverted evidence was admissible according to the law prevailing in the District, it would have to consider further whether it would not be too dogmatic, on the basis of mere speculation, for any court to conclude that the jury would not have attached significance to the evidence favorable to the defendant had the evidence been before it." 336 U.S. at pages 708–709, 69 S.Ct. at page 816. We think it would be too dogmatic.[4] The appellant is therefore entitled to a new trial.

█ It would be unfair not to add that we have confidence in the good faith of the prosecution. Its opinion that evi-

2. We do not attempt to reconcile our present opinion with our opinion in Griffin v. Clemmer, supra note 1. The Supreme Court's opinion has intervened.

3. E. g., Trapp v. Territory of New Mexico, 8 Cir., 225 F. 968; McGuff v. State, 248 Ala. 259, 27 So.2d 241; State v. Wooten, 136 La. 560, 67 So.

366; State v. Minton, 228 N.C. 15, 44 S.E.2d 346.

4. Though the evidence regarding the playing cards in Hunter's hand would, if believed, diminish the significance of the evidence regarding the knife in his pocket, it would not necessarily destroy that significance. Moreover a jury might believe the knife evidence but not the playing-card evidence.

dence of the concealed knife was inadmissible was a reasonable opinion, which the District Court sustained and no court has overruled until today. However, the case emphasizes the necessity of disclosure by the prosecution of evidence that may reasonably be considered admissible and useful to the defense. When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314.

The order of the District Court is reversed and the case remanded with instructions to grant a new trial.

Reversed and remanded.

CLARK, Circuit Judge (dissenting).

I wholly disagree with the opinion agreed upon by my two distinguished colleagues who constitute the majority of this court. In my view it is based upon an entire misconception of the action of the Supreme Court in this very case and an even greater misconception of the nature and extent of the so-called doctrine of "uncommunicated threats." Certainly the present opinion of this court extends that doctrine without limitation to a degree, as far as diligent investigation leads me to believe, which has never been heretofore dreamed of in any court of this or any other jurisdiction.

This case has had a remarkable history. Griffin was convicted of murder in the first degree on March 28, 1947, and on April 18,

he was sentenced to the death penalty. On December 8, 1947, the conviction was affirmed by this court.[5] On March 15, 1948, the Supreme Court denied certiorari.[6] The date for the execution was fixed. Since that time innumerable dilatory motions, applications for writs of habeas corpus and applications for stays have been entered on behalf of defendant. And now by the decision of this court in reversing its own previous decision on this very point[7] (it was *not* reversed by the Supreme Court on the merits) it is sent back to its original starting point to start out on its weary way again. It is probable indeed that Griffin will die of the infirmities of old age before he can be brought to pay the penalty which he so richly deserves.

The present phase of the case arises out of a motion for a new trial on the ground of newly discovered evidence. It was alleged that he or his attorney had just learned that at the morgue it had been discovered that the deceased had an open knife in his pocket, although not in his hand. An elaborate hearing was held in the District Court. The Government frankly admitted that it had this knowledge in its possession at the time of the trial and had not advised defendant of it because it considered that such evidence would be inadmissible. In overruling the motion for a new trial the trial court in a very strong but unreported opinion said: "The question whether a person is justified in attacking an assailant in self-defense must be determined by the facts which were presented to the person who pleads self-defense. He (Griffin) did not know, it appears, that the deceased had an open knife in his pocket, and therefore its existence is irrelevant."[8] An appeal was taken to this court including two of the same three judges who are now sitting on this case. On motion of the Government the appeal was dismissed.[9]

5. Griffin v. U. S., 1947, 83 U.S.App.D.C. 20, 164 F.2d 903.

6. Griffin v. U. S., 1948, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137.

7. Griffin v. Clemmer, 1948, 83 U.S.App. D.C. 351, 169 F.2d 961.

8. U. S. v. Griffin, in the District Court of the United States for the District of Columbia, Criminal Action No. 246–47 (1948), hearing on motion for a new trial.

9. By order entered June 16, 1948.

This action of this court was taken to the Supreme Court on certiorari and that Court in an opinion by Mr. Justice Frankfurter reversed and remanded not because this court was wrong in its action in dismissing the appeal but because we had not accompanied it with an opinion setting out the law on the question in the District of Columbia.[10] The Supreme Court stated (1) that there was no "federal rule" on this subject, (2) that there were no decisions in this jurisdiction setting out the law, (3) that it was the duty and right of this court to define the law of the jurisdiction; and that if it decided that the doctrine applied in the District, it should also decide whether this case was within the rule.

The majority opinion is apparently based upon the contention that there is a mandate from the Supreme Court deciding that this case is one of undisclosed threat. No such thing is to be found within the four corners of the Supreme Court's opinion. To read any such meaning into the plain and incisive language of the Supreme Court requires clairvoyant powers to which ordinary mortals cannot aspire.

Since the opinion of the majority is largely based on this mythical mandate of the Supreme Court it is interesting to examine what the Supreme Court actually said. In the very first paragraph of Mr. Justice Frankfurter's opinion we find: "The decisive issue is the admissibility of that evidence." And later on, 336 U.S. on pages 707–708,[11] we find "It (the Court of Appeals) dismissed the appeal without an expression of views regarding the admissibility of evidence on which the claim for a new trial rests. *It may well have done so on the ground that in the District evidence of this nature is inadmissible.*" [Italics mine.] And again, 336 U.S. on page 709[12] the Supreme Court said: "If the Court of Appeals had decided that the disputed evidence was not admissible in the District of Columbia on a claim of self-defense. and on that ground had sustained the de-

nial of the motion for a new trial, there would have been an end to the matter. It is not to be assumed that this Court would have granted a petition for certiorari to review the ruling since the determination would have been a matter of local law as are the rules of evidence prevailing in the State Courts."

So that we see that the mythical mandate of a Supreme Court upon which the majority opinion is based dissolves into thin air.

In view of these facts it might be profitable to inquire as to the state of the law in the District of Columbia until today. The pronouncement is in this very case in another phase of it but with reference to the very same facts and the very same question here involved. It was appealed to this court in which two members of the present court were members. I did not write this opinion. I would be proud if I had. I was glad to concur in it because I thought it was absolutely right. I find nothing whatever in the Supreme Court's opinion which impinges on my right to continue to adhere steadfastly to that view. That opinion in part reads as follows, Griffin v. Clemmer:[13]

"That record shows that Hunter had, and the prosecutor knew he had, an open knife in his pocket but *not* in his hand. It shows that Hunter's hand was clasped around playing cards, so firmly that they stayed in his hand when it was removed from his pocket after his death. If the knife had been in his hand, as the petition says it was; or even if his hand had been empty, so that an inference might have been drawn that he was reaching for the knife; its presence would have given substantial support to appellant's story that Hunter threatened him. But since Hunter was neither holding nor reaching for the knife and, on the contrary, was firmly clutching playing cards, the fact that an open knife was readily available to him is strong evidence that he had no intention or thought of making a violent attack upon appellant. It therefore gives no support to

---

10. Griffin v. U. S., 1949, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993.

11. 69 S.Ct. 815, 93 L.Ed. 993.

12. 69 S.Ct. 816, 93 L.Ed. 993.

13. Supra, note 7.

appellant's contention that Hunter threatened him or appeared to do so. It even tends, in some degree, to refute that contention. Plainly, therefore, the prosecutor's course in not using the evidence of the open knife, while it may have been unwise, did not detract from the fairness of appellant's trial and is irrelevant in this proceeding."

I see no logical reason for overruling the view then expressed by a unanimous court. The majority with manly candor say that they make no effort to reconcile this opinion with the present opinion. This does credit not only to their candor but to their common sense as well. The two opinions simply by any conceivable process of mind cannot be reconciled.

The Supreme Court in remanding the case used this language: "Nothing that has been said concerning the various possible choices is intended as an expression of preference among the competing rules about the admissibility of uncommunicated threats, nor as the slightest restriction upon the freedom of the Court of Appeals to make its own choice. We purposely withhold any expression of opinion on the merits of any of the permissible views on the admissibility of this evidence. Certainly nothing in our decisions forecloses the Court of Appeals from selecting any one in the range of choices open to it, each one having some rational basis. That court has heretofore been recognized as the appellate tribunal for determining the local rules of evidence; it also is a court that has active experience with the just and practical considerations governing trials for murder, plainly outside the preoccupation of this Court."[14]

I have quoted the language of the Supreme Court verbatim in connection with the contention of the majority of this court that the position taken in their opinion is simply required by the mandate of the Supreme Court. In my judgment this position is untenable.

It seems to me that this decision by this court is completely at variance with the theory and only possible justification of this doctrine. This doctrine originated as part of the legal theory of self-defense. But it was confined to cases where the threat had been disclosed to some third party although not to the defendant.[15] Such evidence was admitted where the issue was as to who was the aggressor in the homicide and where *there were no eyewitnesses.*[16] The classic example is where A applied to B to borrow a gun and stated that he intended to kill C before night. Instead C killed him. The issue was as to who was the aggressor. There were no eyewitnesses. The testimony of B was admitted as part of the self-defense plea even though not disclosed to C at the time of the killing.

It is indeed a far cry from this simple, logical doctrine entirely based on self-defense to the rule announced by this court in the present case which is without limit. Here there were no less than four eyewitnesses who all testified to identically the same effect, including the fact that Griffin in addition to killing Hunter without warning had shot at Hunter's wife and baby and fired several shots at random around the room.

It is true that Wigmore states that uncommunicated threats are admissible in "virtually all courts."[17] But as Mr. Justice Frankfurter, speaking for the Supreme Court incisively observes, Wigmore immediately follows these words with three pages of "qualifications and limitations which prove that there are few questions of admissibility that have occasioned a greater contrariety of views."[18]

Furthermore Wigmore states: "The evidence of threat is inadmissible where there is clear evidence that the *defendant was the aggressor.* Most jurisdictions adopt this rule, and none seems to negative it.

"Furthermore, the threat is only admissible * * * *where there is some other*

14. Griffin v. U. S., 1949, 336 U.S. 704, 715–716, 69 S.Ct. 814, 819, 93 L.Ed. 993.

15. 1 Wigmore, (3rd ed. 1940) sec. 110.

16. Id., sec. 111(3) (c).

17. Id., sec. 111.

18. Griffin v. U. S., 1949, 336 U.S. 704, 709, 69 S.Ct. 814, 816, 93 L.Ed. 993.

*evidence of an aggression by the deceased.* This is usually expressed by saying that there must have been some 'demonstration of hostility' or more shortly some 'overt act' by the deceased."[19]

Here there was clear evidence that defendant was the aggressor. This is supported by the fact that the so-called newly discovered evidence shows that while deceased had an open knife in his pocket, he was not touching it, which negatives the requirement for an overt act.

, I consider the admonition to the District Attorney, and inferentially to the District Judge who approved the conduct of the District Attorney to come with peculiarly poor grace from this court. Both the District Attorney and the District Judge proceeded in accordance with the law of this jurisdiction as it was at that time. It was not only approved by the District Court but by this court, with two of the members who now compose the court sitting.[20]

Here no question of civil rights is involved. Griffin is a bloody handed murderer who has too long defeated the ends of justice. In my judgment this decision seriously reflects on the whole judicial system of the District of Columbia.

So far as I am concerned so long as I remain on the Bench I will decline to follow this case as a precedent and in any similar case will devote my best efforts to overruling it.

19. 1 Wigmore, op. cit. supra, note 8, sec. 111(3) (a), (b).

20. Griffin v. Clemmer, supra, note 7.