**Willis C. ORR, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Misc. No. 3012.**

United States Court of Appeals
District of Columbia Circuit.

Nov. 29, 1967.

Petitioner filed pleadings pro se.

Messrs. David G. Bress, U. S. Atty., and ,Frank Q. Nebeker and Robert S. Brady, Asst. U. S. Attys., were on the pleadings for respondent.

Before BAZELON, Chief Judge, and DANAHER, BURGER, WRIGHT, McGOWAN, TAMM, LEVENTHAL and ROBINSON, Circuit Judges, in Chambers.

## ORDER

PER CURIAM.

On consideration of petitioner's petition for reconsideration *en banc* and of respondent's memorandum in opposition thereto, it is

Ordered by the Court *en banc* that petitioner's aforesaid petition be denied without prejudice to the filing of an amended motion under Title 28 U.S.Code § 2255 in the District Court, and it is

Further ordered by the Court *en banc, sua sponte,* that

Thomas J. Schwab, Esquire
Investment Building
Washington, D. C.          ST 3–8730

a member of the bar of this court, is appointed to represent petitioner for the purpose of preparing said motion and representing him in the further prosecution of this case.

Statement of Chief Judge BAZELON with whom Circuit Judges WRIGHT, McGOWAN, LEVENTHAL and ROBINSON concur as to why he votes to deny reconsideration *en banc*.

BAZELON, Chief Judge:

Convicted in 1961 of robbery, petitioner is confined, whether in a prison or mental hospital does not clearly appear from the record. He has never had appellate review of his conviction. He has an I.Q. of 47. He is mentally ill. He is a homosexual. He has no attorney. In this post conviction proceeding under 28 U.S.C. § 2255, petitioner alleges that his conviction was obtained in violation of the Due Process Clause of the Fifth Amendment "in that [he] was tried without the insanity defense being raised

by the court, his defense counsel or the Assistant United States Attorney"; that he has been mentally ill since adolescence; that he was mentally ill when he stood trial; and that he had been diagnosed "as a sociopath at the Federal Hospital in Springfield, Missouri [in March of 1955] *which was known to the Assistant United States Attorney.*"[1] The District Judge denied relief without holding a hearing and a division of this court denied a timely petition for leave to appeal *in forma pauperis.* Reconsideration *en banc* is now sought.

We think petitioner's motion raises serious questions which should be fully probed at an evidentiary hearing where petitioner is represented by counsel. Judge Wright and I would grant the present petition for reconsideration *en banc* and reverse and remand for a full hearing. Judges McGowan, Leventhal and Robinson, however, think the better course is to appoint counsel to represent Orr and deny his present petition without prejudice to the filing of an amended motion under 28 U.S.C. § 2255, prepared by counsel, in the District Court. Since both courses are permissible under Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), Judge Wright and I have joined in the latter disposition for the purpose of decision.

Because previous efforts to litigate related issues may have confused the parties and the District Court, and because relief was denied on the ground that the "files and records" show that petitioner is conclusively entitled to no relief, we describe the files and records in some detail. Of course, the parties will be free in any new proceeding to challenge the accuracy of our description.

## I

In 1961, petitioner stood trial on a charge of robbery. The trial was uncomplicated, the total transcript running less than seventy pages. The complainant testified that petitioner robbed him at knife point after he had rejected petitioner's invitation to perform a homosexual act. Petitioner, on the other hand, testified that the few dollars involved were "earned" by performing such an act and that thereafter complainant demanded return of the money and gave chase when petitioner refused. The jury found petitioner guilty and the trial judge imposed a four to twelve year prison sentence. The record shows that no pre-trial motions of any kind were made, no mental examination requested, and no issue of criminal responsibility raised.[2]

After sentence had been imposed, appointed trial counsel apparently withdrew from the case and petitioner attempted to perfect a *pro se* appeal. Because he filed three days late, his appeal was dismissed as untimely. United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1961).[3] Thus, his conviction became final.

In April of 1962, about four and a half months after sentence, petitioner was examined by a jail psychologist who was of the opinion that he was probably mentally ill. Dr. Lanham, Chief of Legal Psychiatric Services, examined petitioner a month later and found him:

> almost totally incoherent, confused and practically in a panic state at the time I saw him; so it was hardly possible to even carry on any kind of lengthy interview with him. * * * He spoke of rattle snakes, lions and tigers in his cell. * * * He also spoke of hearing voices when no one was around. He was quite depressed,

1. The motion filed in the District Court was quite obviously prepared by an attorney or one tutored in the law. It is electrically typed, the grammar is correct, and the allegations are short, concise and professionally stated. By contrast, petitioner's papers in this court are hand-written, confusing and inartistically drawn.

2. United States v. Orr, Crim. No. 589–61 (D.D.C.)

3. Orr v. United States, Misc. No. 1809 (D.C.Cir., Sept. T. 1961).

talked about killing himself if he could find the occasion and the means.[4]

Dr. Lanham diagnosed petitioner's illness as "chronic Schizophrenic condition" and opined that the illness had persisted since early childhood.[5] In making his examination and arriving at his conclusions, Dr. Lanham considered, inter alia, a finding made in March, 1955, by authorities at the U. S. Medical Center in Springfield, Missouri, to the effect that petitioner was a "sociopathic personality, mental deficient."[6] As a result of this examination and diagnosis, Donald Clemer, Director of the District of Columbia Department of Corrections, certified on May 23, 1962, that petitioner had become mentally ill while serving sentence, 24 D.C.Code § 302 (1961).[7] Accordingly, he was transferred to Saint Elizabeths Hospital.

In September of 1962, a petition for writ of habeas corpus was filed in the original criminal case, petitioner alleging that he was mentally ill at the time the crime was committed *and* that he was mentally ill and thereby incompetent at the time of trial and sentence. The District Court denied the writ[8] and petitioner filed a "petition for writ of habeas corpus" in this court.[9] We appointed counsel to prepare a memorandum in support of the petition. Principally, counsel pointed out various jurisdictional defects which, in his opinion, precluded favorable action on that petition.[10] Addressing himself to the merits, counsel said:

Petitioner's claim of mental illness at the time of trial and at the time the offense was committed may possibly be well founded in fact. * * * Petitioner has a history of earlier mental illness. *During 1953 and 1954 he spent about 18 months at the U. S. Medical Center, Springfield, Missouri, under Observation and treatment for mental illness.*[11]

We entered an order denying the petition but providing that our action was:

without prejudice to petitioner filing a petition in the District Court, within 30 days from the date hereof, asserting the claims for relief contained in the aforesaid application. Counsel is requested to continue to represent petitioner for the purpose of seeking such relief in the District Court if counsel determines that the filing of an action in that court is proper and in the best interests of petitioner.[12]

Counsel wrote petitioner on February 4, 1963, informing him that counsel had decided against filing a further proceeding in the District Court. In that letter counsel stated:

In accordance with the request of the Court of Appeals I undertook to obtain medical evidence concerning the condition of your mental health on October 13, 1961 [the date of petitioner's trial]. *I had ascertained that a record of your hospitalization for a mental condition at the United States Medical Center, Springfield, Mo. had been obtained by St. Elizabeth's Hospital, where you are now under treatment.* Accordingly, I directed a letter to St. Elizabeth's Hospital asking whether there was a sound basis for

4. Transcript, Orr v. United States, Civil Action No. 2221–63 (D.D.C.) at pp. 42–43.

5. Id. at pp. 44, 46.

6. Id. at p. 44.

7. Exhibit "A" To Return To Order To Show Cause Why Writ Of Habeas Corpus Should Not Issue, In re Willis C. Orr, Habeas Corpus No. 366–63 (D. D.C.).

8. United States v. Orr, Crim. No. 589–61 (D.D.C.), order entered September 17, 1962.

9. Orr v. United States, Misc. 2005 (D.C. Cir., Sept. T. 1962).

10. The principal jurisdictional hurdles were (a) this Court lacks power to issue a writ of habeas corpus and (b) treated as a petition to appeal, the application was untimely.

11. Memorandum for Petitioner, Orr v. United States, supra note 9, at 2 (emphasis added).

12. Order of January 14, 1963, Orr v. United States, supra note 9.

an opinion as to the condition of your mental health on October 13, 1961. * * * I received the following reply: * * * In reviewing Mr. Orr's case and in further discussion regarding it, we are unable to express opinion [sic] regarding Mr. Orr's competence on October 13, 1961. You will note that this date precedes Mr. Orr's admission to Saint Elizabeth's Hospital by over seven months. * * *

As you see, the foregoing provides no basis for a contention in the District Court that you were mentally unable to assist with your defense at the time of your trial and, for that reason, I am unable to justify any further request for relief on your behalf.[13]

We denied petitioner's *pro se* motion for appointment of other counsel.[14]

In September, 1963, petitioner filed a *pro se* petition for writ of habeas corpus alleging that he "do not know why he was committed [to the hospital], and for what reason * * *."[15] Dr. Cameron submitted an affidavit, explaining how petitioner came to be in the hospital, and concluded:

During this petitioner's period of confinement in Saint Elizabeth's Hospital, he has been under the care and observation of members of the medical staff * * * who are of the opinion that he is suffering from Schizophrenic Reaction, Chronic Undifferentiated Type; that he is of unsound mind, to wit: petitioner is delusional and has hallucinations, he shows a thought disorder, his affect at times is inappropriate, his judgment is poor, he lacks insight into his mental condition; and, that he is still in need of care and treatment in a mental hospital.[16]

The District Court discharged the writ. No appeal was taken.

In September, 1963 (while the above habeas corpus action was still pending), petitioner filed his first motion to vacate sentence under 28 U.S.C. § 2255. He alleged, in substance, that he was incompetent to stand trial and mentally ill on the date the crime was committed. The Government took the position that this issue had been adversely decided.[17] The District Judge agreed and denied the motion without a hearing. We granted a petition for leave to appeal *in forma pauperis* in an order which further provided:

This case is hereby remanded to the District Court with directions to vacate its order appealed from herein and to grant a hearing on petitioner-appellant's motion under Section 2255 of Title 28 U.S.Code at which hearing will be developed of record the facts and circumstances alleged, to the end that prompt determination be made as to petitioner-appellant's mental competency at the time of this trial. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).[18]

Pursuant to our order, the District Judge vacated his order, appointed counsel, and set a date for a hearing. Petitioner's counsel sought a continuance of the hearing in order that petitioner could be examined by qualified psychiatrists to determine whether he was competent to assist counsel in the competency hearing. That motion was accompanied by counsel's affidavit which alleged, *inter alia:*

That more particularly deponent believes such mental examination to be required because of certain bizarre

13. Letter from Keith L. Seegmiller, Esq., to Willis C. Orr, February 4, 1963, p. 2 (emphasis supplied), a copy of which is in this Court's file in Orr v. United States, supra note 9.

14. Order entered March 8, 1963, Orr v. United States, supra note 9.

15. Petition for Writ of Habeas Corpus, In re Willis C. Orr, Habeas Corpus No. 366–63 (D.D.C.), p. 2.

16. Return To Order To Show Cause Why Writ Of Habeas Corpus Should Not Issue, In re Willis C. Orr, supra note 15, ¶ 2.

17. Opposition to Motion to Vacate, Orr v. United States, supra note 4.

18. Orr v. United States, Misc. No. 2254 (D.C.Cir., Sept. T. 1963), order entered March 17, 1964.

statements made by petitioner to deponent during the conference aforementioned [an attorney-client conference]. Thus, petitioner stated to deponent that:

(a) He did not remember that there was a jury present at his trial on October 13, 1961, but rather that the only parties present were the United States Attorney, the Judge, and his lawyer, all of whom were "sitting around the table talking about his case."

(b) That lions were allowed to enter his cell at his place of imprisonment; that he had to run from them; and only avoided being mauled by them by backing into a corner.

(c) That while at Saint Elizabeth's Hospital he was receiving medicine which was supposed to keep the snakes away from him which were infesting his room.

(d) That at one point in his conversation about five months ago, and at another point, more recently, a "big thing came into his room—not an animal and not a human being"—something that he concluded must have been a ghost.

(e) That now and then he still sees the snakes in his room, although he now believes that it is his imagination working on him.

That otherwise, petitioner was irrational in his answers to deponent's inquiries, evidencing a lack of comprehension in regard to some material aspects of both the instant proceeding and his trial * * *.[19]

The affidavit also referred to the Springfield hospital report, counsel representing:

That petitioner's record shows that while incarcerated at the Federal Penitentiary at Springfield, Mo., he was found to have a defective mentality and was diagnosed in March of 1955 as suffering from a sociopathic personality disturbance with a mental deficiency (I.Q. 47).

The District Court granted the motion and directed that Dr. Lanham, Chief of Legal Psychiatric Services, conduct a "psychiatric evaluation" of petitioner.

Dr. Lanham submitted a report which read, in pertinent part:

In my opinion, Orr continues to suffer from a mental disease, i. e., Schizophrenic reaction, chronic undifferentiated type, although his symptoms are now largely in remission while in the protected environment of a psychiatric hospital. I think he might be considered mentally competent at this time, but he can assist counsel very little since he claims complete amnesia for the facts of the alleged offense. I further believe that if he is brought to trial it should be directly from the hospital, because I believe he might well become acutely psychotic if he had to spend a protracted period in Jail awaiting trial.

I can form no opinion about Orr's mental competency at the time of his trial and sentencing, except to say that he has apparently had the symptoms of a schizophrenic illness in one form or another for a number of years. I cannot say if these symptoms were acute enough at the time of his trial to render him incompetent.[20]

The hearing was subsequently held. Dr. Lanham testified that, in his opinion, petitioner was suffering from a chronic schizophrenic condition which had existed since petitioner's adolescence.[21] Dr. Lanham made reference to the 1955 report of the U. S. Medical Center at

19. Affidavit of Richard A. Mehler dated June 25, 1964, Orr v. United States, supra note 4, at pp. 3–4.

20. Letter from Dr. David A. Lanham to Honorable Richmond B. Keech, September 8, 1964, the original of which is in the file in Orr v. United States, supra note 4.

21. Transcript, Orr v. United States, supra note 4, at pp. 42–46.

Springfield, Missouri.[22]  Dr. Economon, a St. Elizabeth's psychiatrist, testified:

In my opinion Mr. Orr has been suffering from a schizophrenic reaction, as his particular form of adjustment in life, since at least early childhood, and I will agree with Dr. Lanham, that it probably made itself manifest, if you will, to the public eye during early adolescence, certainly no later than 11, 12, 13 years old.[23]

Petitioner's trial counsel testified that he "had no suspicion of any mental instability" and that he "asked [petitioner] whether he had ever had any mental examination, and he had told me no."[24] Petitioner also testified that, although he knew that he had been examined by some doctors, he was never told of the doctor's diagnosis and did not know that he was suffering from a mental illness.[25]

The District Judge found as a fact that "Willis C. Orr was probably able to understand the nature of the proceedings pending against him and to properly assist counsel in his defense."[26] He concluded, as a matter of law, that petitioner "was mentally competent at the time of his trial and sentencing * * *"[27] and, that "petitioner has failed to sustain his burden of proving that he was mentally incompetent at the time of trial and sentencing."[28] An order was entered denying the motion to vacate sentence and a *pro se* application for leave to appeal *in forma pauperis* was denied

with the notation "not good faith, i. e., no substantial question and in my judgment frivolous."

We permitted Orr to appeal *in forma pauperis*.[29] Counsel, whom we appointed, expressly abandoned the competency issue.[30] Instead, he argued that:

the overwhelming evidence of appellant's mental illness long prior to, at, and since the offense and trial requires a remand of this case for a hearing to determine whether the insanity defense should have been raised at trial by either the court, the defense counsel or the United States' Attorney.[31]

The Government, *inter alia*, objected to this issue being raised for the first time on appeal.[32]  We affirmed the order of the District Court without opinion.

## II

In the present motion, petitioner alleges that the prosecutor had knowledge of the Springfield report but that he did not divulge the contents thereof to petitioner's trial counsel or to the trial judge. Cf. United States v. Sharp, 381 F.2d 708 (per curiam) (4th Cir. 1967). This allegation, if true, raises substantial questions for review whether the problem is approached from an intentional or negligent nondisclosure theory,[33] or whether the rationale of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1964), is broadened to require the prosecutor to seek a competency hearing when-

**22.** Id. at p. 44.

**23.** Id. at p. 57. Dr. Economon concurred in Dr. Lanham's diagnosis as to the nature of petitioner's illness. While he was unable to give a firm opinion as to petitioner's competency to stand trial in October of 1961, Dr. Economon was firmly of the opinion that petitioner was suffering from a mental illness when he stood trial and before. Id. at pp. 56–57, 58.

**24.** Id. at p. 36.

**25.** Id. at pp. 16, 18.

**26.** Findings of Fact and Conclusions of Law, Orr v. United States, supra note 4, p. 1 ¶ 4.

**27.** Id., at p. 2 ¶ 2.

**28.** Id., at p. 2 ¶ 3.

**29.** Orr v. United States, Misc. No. 2528 (D.C.Cir., Sept. T. 1964), order entered July 19, 1965.

**30.** Brief for Appellant, Orr v. United States, No. 19,551 (D.C.Cir., Sept. T. 1965), p. 11.

**31.** Id. at -i-, pp. 12&20.

**32.** Brief for Appellee, Orr v. United States, supra note 30, at pp. 7–10.

**33.** E. g., Ashley v. State of Texas, 319 F. 2d 80 (5th Cir.), cert. denied, 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963); cf. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966); Griffin v. United States, 87 U.S.App.D.C. 172, 183 F.2d 990 (1950).

ever sufficient evidence comes to his attention raising a bona fide doubt as to the defendant's competency to stand trial.[34] We do not now, of course, decide those questions.

## III

We are not unaware that petitioner's complaint in the District Court was skimpy, and the prosecutor's unequivocal denial of any knowledge that might raise a question as to petitioner's mental condition, coupled with the long history of unsuccessful motions, may have lead the District Judge to conclude that further inquiry was bootless. However, when we asked the government to respond to the present petition, it acknowledged that its trial file disclosed petitioner's eighteen-month hospitalization at Springfield. We think this additional fact ought to be incorporated in any new motion and explored, together with the other allegations, in an evidentiary hearing. By its *en banc* order this court, *sua sponte*, is appointing counsel to represent petitioner in the further prosecution of this case in order to assure that petitioner's disabilities do not prevent his pursuit of a remedy in a new proceeding. Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

So ordered.

---

34. E. g., Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). We do not think a prisoner who is mentally ill as well as mentally retarded can be charged with abusing the motions process because he did not articulate this object sooner. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).